## LUNSCHEON v. WOCKNITZ.

In an action for damages for false representations by which plaintiff was induced to contract to purchase land, the execution of the contract being admitted, and the issues limited to questions of actionable deceit by defendant concerning the quality of the land, it was not error to exclude the contract from evidence,

Evidence, in an action for damages for false representations by which plaintiff was induced to contract to purchase land, held to show that plaintiff reposed full confidence in defendant's representations, which defendant knew to be false, and was thereby induced to pay an excessive price for the land.

A purchaser of real estate may rely upon the representations of the vendor touching the quality of the property, and may either rescind the transaction, or recover compensatory damages for fraud in the representations.

(Opinion filed, April 20, 1907.)

Appeal from Circuit Court, Davidson County. Hon. FRANK B .SMITH, Judge.

Action by Ricklef Lunscheon against Albert Wocknitz. From a judgment for plaintiff, defendant appeals. Affirmed.

*T. J. Spangler* and *J. L. Quinn,* for appellant.

When a contract has been reduced to writing, without any uncertainty as to the object and extent of the obligations, the presumption is that the entire contract was reduced to writing and oral testimony as to declarations at the time it was made, or prior thereto, are not admissible and this presumption is conclusive, and no conditions, or terms can be added to or taken from, the written contract. 2 Rice on Ev. 1259—60; Dodge v. Kiene, 44 N. W. 191; Thomas v. Plow Co., 76 N. W. 876; 1 Greenl Ev. Sec. 275; Mattison v. Ry. Co., 60 N. W. 925; Clark v Kelsey, 60 N. W. 138; Johnson v. Bank, 96 N. W. 588. Where there is a written contract, there can be no verbal warranty shown by parole evidence. 30 A. & E. Enc. L. 131; Leather Co. v. Leather Co., 104 N. W. 797; Watson v. Roode, 46 N. W. 491; 22 A. & E. Enc., Pl. & Pr. 542; 2 Rice on Ev. 1317. Written contracts may be attacked on the ground of misrepresentation and fraud. 1 Rice on Ev. 393. Where an action is brought in tort for fraud and deceit, there can be no recovery on contract for a breach of warranty. 30 A &. Eng. Enc. Law, 131 and note 3; 2 Rice on Ev. 665; Bank of U. S. v. Shultz, 2 Ohio 471; Stillman v. Wickham, 76 N. W. 1008.

*Preston & Hannett,* for respondent.

A buyer may maintain an action based on fraudulent representations made by the seller although such representations were not such as would amount to a warranty. Oregon Imp. Co. v. Roach, 57 N. Y. Supr. Ct. 228; Pinney v. Andrus, 41 Vt. 631; The respondent has a right to show by parol evidence that he was induced to execute the said written contract, and complete the purchase of the land in question, by reason of the false representations of the defendant that said land was free from stone and gravel; and that parol evidence is permissible to show the making of said representations, the falsity of the same and the reliance of the plaintiff upon the truth of the statements so made to him. Downey v. Hatter, 48 N. W. 32; Miller v. Kennedy, 12 S. D. 478, 81 N. W. 906; Herring v. Mason, 43 S. W. 797; Wright v. U. S. Mortgage Co., 42 S. W. 789-1026; Griffith v. Strand, 54 Pac. 613; Meyers v. Rossenback, 25 N. Y. S. 521; Durkin v. Cobbleigh, 30 N. E. 474. Fraud when proven, will affect the validity of the written instrument and may be shown by parol. Lewis v. Wil-

loughby, 45 N. W. 459; Cooper v. Fink, 35 N. W. 467; Hicks v. Stevens, 11 N. E. 241; Thudium v. Yost, 11 A. 436; Coke v. Pottsville Bank, 2 Am. St. 600.

FULLER, P. J.  Sufficient facts are stated in the complaint to constitute a cause of action for damages arising from the alleged false and fraudulent representations of appellant, by which respondent was induced to enter into a contract for the purchase of a Davison county farm at $40 per acre.  The execution of the contract and performance on the part of respondent according to its terms being admitted, the issues were limited by the pleadings to questions of actionable deceit and misrepresentations on the part of appellant concerning the quality of the land, and it was not erroneous for the trial court to sustain the objection of counsel to the introduction of such contract in evidence.  While there is a conflict of testimony as to the representations made by appellant concerning the quality of the land described in the contract, which both parties affirm, and upon which respondent elected to stand and recover the damages to which a defrauded buyer is legally entitled, the verdict in his favor is amply sustained by the evidence.

At all times prior to the bargain and sale respondent was a nonresident of this state, and wholly unacquainted with the premises in question, or any of the land in that neighborhood.  On the 3d day of January, 1903, when the ground was covered with snow from eight inches to two feet in depth, he visited the farm and entered into negotiations with appellant, concerning which he thus testified:  "I couldn't see the ground, and I said: 'How is the ground?  I want to know if there is any stone on the ground.'  He said there was not a bit; you could plow from one end to the other, six or eight inches deep, without striking a stone.  He said he had put posts in the ground all around, and he didn't strike any stone. He said it was all good, nice land, free from gravel and stone.  There was nothing else said at that time about the character of the land. He told me the price, and that was all.  The same day we went up to Luverne, Minn., and he said the same thing.  I ask him there if he guaranteed the land free from gravel and stone.  He said he had proved that by putting in fence posts and plowing.  At the conversation at the farm in Rome township, Mr. Peterson was

present. At the conversation at Luverne, Minn., Mr. Peterson and Mr. Laugharn were present. He told me he would secure the land, and I believed it. * * * The land is stony and gravelly, but at that time I could not see whether it was or not. When the snow was off, I saw it. Some of the land you can't break it hardly, it is too gravelly and stony. The quarter in section 15 is pretty near half gravelly and stony. We can't see all through. It must be anyhow 50 or 60 acres. I first discovered that it was gravelly and stony the 1st of April- 1903, when the snow went off. Then I told Mr. Wocknitz. He said he would put the stone off. I called his attention to its being gravelly. He said there was no gravel. On the top is a little soil, about an inch, and then you got gravel. You can't use a plow. At the time I went to see this land, I lived at Tipton, Iowa. At that time I was at Luverne. I had never been down in that country, in Rome township, before. I never knew before the character of the land in that country. That was the first time I ever went out there. I didn't know much about the land in that part of South Dakota."

On cross-examination, he testified in part as follows: "Mr. Wocknitz wanted $40 for the land, and I paid him $40 per acre. I paid him after we made the contract. We made a contract down at Luverne. I believe it was the 7th day of February. Mr. Davis made the contract. He wrote it out. I signed it, and Mr. Wocknitz signed it. I went to Wocknitz's place to look at the land. I went with Mr. Peterson and the liveryman. The conversation we had there at that time was: I asked Mr. Wocknitz—there was snow on, and I couldn't see the land—what kind of land it was, and he said it was free from stone and gravel. I knew he wanted $40 per acre. When I went there, the first he said about the price of this land, he said, 'Yes, he wants $40 an acre.' I told him the land lies all right enough, but I couldn't see the ground. I didn't want any gravel or stone. He secured me there was none. That is what he said. He guarantied that land free from gravel and stone. He said you could plow that ground from one end to the other and wouldn't strike gravel, or stone. There was lots of snow there when I went out there that day. Anyhow there was eight or ten inches deep on a level; some places a good deal more than ten inches.

It was covered eight to ten inches anyhow. I don't believe there was any place on the land that it was not eight or ten inches deep. The land lay good enough, a little rolly. It lay good. I have no complaint on the lay of the land. The first day I was there I did not examine the land. I didn't go away from the yard. That was January, 1903. I was out here in June, 1903. I don't know which day it was."

By several witnesses respondent was corroborated as to the ground being covered with snow when the purchase was made, and that during the negotiations appellant repeatedly represented the farm to be so free from stone and gravel that neither would be encountered in digging post holes two feet deep anywhere or by plowing eight inches in depth entirely across the premises, and that he asserted such statements to be true from actual knowledge and experience, while as a matter of fact there is so much stone and gravel upon or near the surface that plowing is rendered quite difficult in many places, and the value of the property, as represented, would be greater than it actually proved to be. It was quite clearly shown that in making the purchase respondent reposed full confidence in these representations, which appellant knew to be false, and was thereby induced to pay $40 an acre, which the jury found was $960 in excess of the actual value of the farm. Under the facts and circumstances of the case, it is well settled that a purchaser of real estate has a right to rely upon the representations of the vendor touching the quality of the property, and may either rescind the transaction or recover compensatory damages. Mullen v. Kinsey, 50 Neb. 466, 70 N. W. 18; Allen v. Henn, 197 Ill. 486, 64 N. E. 250; Clinkenboard v. Weatherman, 157 Mo. 105, 57 S. W. 757; Brett v. Van Auken, 99 Iowa, 553, 68 N. W. 891. The amount recovered was fully justified by competent evidence admitted and considered under the measure of damages, applicable to such cases and there is nothing in the record of which appellant has just cause for complaint.

The judgment appealed from is affirmed.

CORSON, J., not sitting.