KERR, Respondent, v. STAUFER, et ux, Appellants.

(238 N. W. 156.)

(File No. 7027.   Opinion filed October 5, 1931.)

*Harlan J. Bushfield,* of Miller, for Appellants.

*W. F. Bruell* and *R. M. Henderson,* both of Redfield, for Respondent.

MISER, C. This is the second appeal of this case. At both trials in circuit court appellants Staufer had verdict in their favor. Judgment on the first verdict was reversed by this court. 52 S. D. 223, 217 N. W. 211, 213. The decision in that case concluded: "If the jury was satisfied by the evidence that defendants had been damaged, their next duty was to determine the amount of the damage which, pro tanto, would be a defense. This necessitated an instruction as to the true measure of damages, which they did not receive. In view of the fact that a new trial must be had, the answer should be so amended as to fairly advise the trial court of respondent's claimed defense."

After the second verdict the trial court granted judgment in favor of the plaintiff notwithstanding the verdict. This appeal is from the judgment so entered and from the order denying defendant's motion for a new trial.

Prior to the second trial, defendants filed an amended answer and counterclaim. After the first thirteen paragraphs thereof, defendants pleaded, by way of counterclaim, that under the terms of the contract of sale between the defendants and the Texas Delta

Farms Company, the assignor to plaintiff of the notes sued on, the defendants agreed to pay $10,473 for 34.91 acres of Cameron county, Tex., land, known as block 70; that the defendants have actually paid $5,236.50 under such contract, and delivered the three promissory notes sued on; that the land was worth not more than $2,000, and the defendants were thereby damaged in the sum of $8,473; that the Texas Delta Farms Company, as an inducement for the defendant to complete such sale, executed and delivered to them a written guaranty that block 70 was all good, high, irrigable land, not low or swampy, and was worth the sum named in such contract of purchase; that such land was in fact cut in two by a steep ravine or swamp, was partially low, alkaline land, and was all non-irrigable, and was practically worthless.

The evidence shows that the defendants, appellants herein, husband and wife, with some 40 other persons from the Dakotas, were taken in two special coaches to see a tract of land which the Texas Delta Farms Company had bought near San Benito, Tex. After three days of lavish entertainment, during which they were shown improved farms and unimproved lands, some of which were covered with a dense growth of mesquite and cactus, the Staufers signed a contract for the purchase of block 70, gave their check for $500 and two notes as earnest money payments. After their return to South Dakota, they stopped payment on their $500 check on the advice of their banker and their lawyer. Thereafter Hansen, president of the company, called at their home in Hand county and induced them to pay the check and the two earnest money notes, secured from them vendor's lien notes aggregating $1,962.17 in payment of the balance of the purchase price, the land being already subject to vendor's lien notes aggregating $3,274.33, and delivered to them a deed to block 70. The notes thereafter assigned to plaintiff, Kerr, respondent herein, were for $1,787.27 of that balance of $1,962.17. For a more particular description of these notes see the former decision. Though the notes recite as the place and time of execution thereon, "San Benito, Texas, June 15, 1920," they were, in fact, executed in Orient, S. D., on July 14, 1920, over a month after the Staufers' return from Texas.

At the time and place of that mutual delivery of vendor's lien notes and deed Hansen delivered to appellant John Staufer two instruments. In one the company agreed to lease such portion of

the land as Staufer should get cleared within the next ninety days and to pay for such lease the sum of $30 per acre. The other instrument is the written guaranty mentioned in defendants' counterclaim which reads:

"We do hereby guarantee to you that the 34.91 acres of land you have purchased from us is all good, high, irrigable land and is not low or swampy, and we have sold the land to you under this representation,

"Texas Delta Farms Company,
"G. M. Hansen, President."

■ If appellants were defrauded, they had an election of remedies. They could either have rescinded the sale, restored what they received and recovered back what they paid, section 906, Rev. Code 1919, or they could have kept the land and set up as a counterclaim, pro tanto, against the notes—which in the former opinion we held to be nonnegotiable—the damages sustained by reason of the fraud. Lunscheon v. Wocknitz, 21 S. D. 285, 111 N. W. 632.

■ ■ They did not rescind. Although advised by their banker and by their counsel to stop payment on the check and rescind the sale, they kept the land. In 1922, after being all over block 70, and knowing then, if they did not know before, what they had received, they exchanged with one Hepper this 34.91 acres of mesquite covered land for 40 acres, known as block 75, less than a mile distant. Hepper had paid $325 per acre for block 75 in 1920; had spent $27 per acre in clearing it of mesquite and cactus and about $1,600 on buildings. In addition to this, he had spent about $400 for canals and fences. Also as part of the transfer Hepper delivered to Staufer personal property, live stock, machinery, etc., worth $1,500, and Hepper assumed the payment of the notes herein sued on and the prior vendor's lien notes, aggregating in all $5,236.50, and was to receive from Staufer the 34.91 acres and $4,000, and Staufer was to assume the payment of the vendor's lien notes against the Hepper 40 aggregating $3,574.25. So that appellants not only did not rescind, but they estopped themselves to rescind. They pleaded want of consideration, but their own witnesses placed a value on the land of $100 an acre and they traded it for an improved 40 acres on which Hepper had produced vast quantities of cabbage, beans, and other crops, but

made no money doing so. They also pleaded that they were relieved of liability by Hepper's assumption of their debt, but neither respondent nor his assignor accepted Hepper as a debtor in lieu of Staufer.

Did they plead damages for fraud? The elements of actionable fraud are briefly stated in Ward v. Dakota Tel. & Elec. Co., 49 S. D. 135, 148, 206 N. W. 695, 700, to be "representation, its falsity, scienter, deception, and injury." Therein also, quoting 26 C. J. 1064, this court said: "Fraud without damage or damage without fraud is not actionable; but where both concur, an action lies. Each of the elements must be established, and the absence of any one of them will prevent recovery."

In that case, because appellants Funston failed to establish any amount of damages, and because therefore the trial court failed to find any amount of damages which they sustained, the judgment against them on the note sued on was affirmed.

■ ■ It is not the law in South Dakota that one who pays $300 an acre for land, which land was only worth $100 an acre, is, ipso facto, entitled to damages at the rate of $200 an acre, even though the sale was induced by fraud. In Hallen v. Martin, 40 S. D. 343, 167 N. W. 314, this court committed itself, after a careful review of authorities, to the rule that the measure of damages, in tort actions for fraud and deceit by misrepresentation of the quality of the land, is the difference between the actual value of the property at the time of the exchange and what it would have been worth if the representations had been true. Judges Whiting and Gates dissented from the majority rule, setting forth at length their reasons and the authority therefor, but later in the same year, in Barker v. Coats, 41 S. D. 45, 168 N. W. 797, 798, in an opinion written by Judge Whiting and concurred in by Judge Gates, this court said: "Appellant assigns as error the instruction giving the rule of damages to be applied by the jury. The rule so given was that sustained by the majority of this court in Hallen v. Martin, 40 S. D. 343, 167 N. W. 314." And in 1925, in Ward v. Dakota Tel. & Elec. Co., 49 S. D. 135, 148, 206 N. W. 695, 700, the rule was reaffirmed.

■ After indicating an intention to rescind—and then paying their $500 check and two notes and giving the vendor's lien notes

in suit, after seeing exactly the kind of land they had bought, and then trading it off, appellants no longer had a defense against their notes; at most, they had a counterclaim or set-off for damages for fraud and deceit. But in their pleading denominated a counterclaim, even when supplemented with the thirteen paragraphs of answer preceding it, there is not a cause of actionable fraud stated. There is no sufficient allegation of damages. Nowhere is it alleged what the land would have been worth had it been as represented. But even more fatal than the defects in the pleadings was the failure to prove damage. No one was asked nor testified what this land would have been worth had it been as represented. In the former opinion, appellants were told that their pleading should be amended, and it was specifically pointed out that the jury should be instructed as to the true measure of damages. This presupposes proper allegation of damage and sufficient proof of its amount. There was neither. As a result, the verdict returned for appellants cannot be sustained under a rule for measuring damages which has been the unquestioned law of this state for many years.

On the other hand, plaintiff proved the execution and delivery of the three notes by defendants, and that he was the assignee of such notes for a valuable consideration before maturity. Under these circumstances, was it error for the trial court to enter judgment for plaintiff notwithstanding the verdict returned in favor of the defendants? Appellants contend that it was error, relying on the text in 33 C. J. 1181 to 1184, and numerous federal cases. But the entry of judgment n. o. v. in South Dakota is not ruled by the common law nor by the federal decisions cited. It is ruled by chapter 181, Laws 1921, which added subdivision 5 to section 2563, Rev. Code 1919. This is in part as follows: "In all cases where at the close of the testimony in the case tried, a motion is made by either party to the suit requesting the trial court to direct a verdict in favor of the party making such motion, which motion was denied, the trial court on motion made, that judgment be entered notwithstanding the verdict, or on motion for a new trial, may order judgment to be entered in favor of the party who was entitled to have a verdict directed in his or its favor."

The foregoing furnished ample statutory authority for the entry of judgment n. o. v. in the case at bar, in view of the suffi-

ciency of plaintiff's proof of his cause of action and the insufficiency of defendants' proof of their counterclaim. There are cases holding that judgment n. o. v. should not be entered where it is probable that any mere deficiency in either pleading or proof can be supplied if another trial is had. Nadeau v. Maryland Casualty Co., 170 Minn. 326, 212 N. W. 595. But this is not such a case, for appellants have had two trials, and have supplied neither the deficiencies of pleading or proof. In view of the special opportunity of the learned trial judge to see and hear the litigants and witnesses at the second trial, his estimate of the possibilities of a third trial is entitled to great weight. He granted judgment n. o. v. in this case only after a careful review of the law and the evidence. Taking into consideration the two trials already had, the condition of the pleadings, the state of proof, the fact that one of the grounds on which motion for directed verdict was based was that "no damages have been pleaded and no damages have been proven as a proper measure of damages," yet appellants neither amended their pleadings nor supplemented their proof, we cannot say that the trial court erred in entering judgment n. o. v. for plaintiff.

The judgment and order appealed from must be, and they are, affirmed.

POLLEY, P. J., and CAMPBELL, ROBERTS, WARREN, and RUDOLPH, JJ., concur.