MAIN, Plaintiff
v.
PROFESSIONAL AND BUSINESS MEN'S
LIFE INSURANCE COMPANY, Defendant

MAIN, as guardian for Marlin Main, Plaintiff
v.
PROFESSIONAL AND BUSINESS MEN'S
LIFE INSURANCE COMPANY, Defendant

SANDS, Plaintiff
v.
PROFESSIONAL AND BUSINESS MEN'S
LIFE INSURANCE COMPANY, Defendant

PETIK, Plaintiff
v.
PROFESSIONAL AND BUSINESS MEN'S
LIFE INSURANCE COMPANY, Defendant

MAIN, as guardian for Max Main, Plaintiff
v.
PROFESSIONAL AND BUSINESS MEN'S

LIFE INSURANCE COMPANY, Defendant

HOFFMAN, Plaintiff

v.

PROFESSIONAL AND BUSINESS MEN'S
LIFE INSURANCE COMPANY, Defendant

MAIER, Plaintiff

v.

PROFESSIONAL AND BUSINESS MEN'S

LIFE INSURANCE COMPANY, Defendant

(122 N.W.2d 865)

(File No. 9997. Opinion filed July 16, 1963)

Rehearing denied September 9, 1963

**Martens, Goldsmith, May & Porter,** Pierre, for Defendant and Appellant.

**Johnson & Price,** Lemmon, for Plaintiffs and Respondents.

RENTTO, J. These seven lawsuits, concerning different policies of life insurance purchased by the respective plaintiffs, at about the same time, are substantially similar. Each is premised on the general proposition that they were induced to buy the policies involved by false and misleading representations and statements of the defendant company ·and its agent. After a consolidated trial the circuit court entered findings and conclusions favorable to the plaintiffs and awarded each of them judgment in the amount of the premiums paid with interest from the date of payment. The defendant company appeals from the judgments.

Defendant made a motion that the plaintiffs be required to elect whether they were affirming the contracts involved and seeking to recover the damages caused by the alleged fraud or were disaffirming them and seeking their rescission. The denial of this motion is defendant's basic complaint on these appeals.

After alleging the dates when the representations and statements were made the complaints, each containing only one count, proceed to particularize them. In essence these are similar to those the court found were made by the same agent in Sabbagh v. Professional and Business Men's Life Ins. Co., 79 S.D. 615, 116 N.W.2d 513 and detailed in our opinion, in that case, which incidentally was filed after the appeals in these cases were taken. These are followed by averments that the defendant knew they were false and made them with intent to deceive the plaintiffs and induce them to purchase the policies in question; and that plaintiffs were ignorant of their falsity and relied thereon in purchasing the policies involved and paying the premiums therefor.

The complaints also state that the policies received were not as represented by the defendant and were never accepted by the plaintiffs. It is then alleged in each action:

"That the Plaintiff over a considerable period of time objected to the Defendant Company as to the contents of said policy and demanded of the Defendant Company that stock be issued as required by the representations of the Company and that upon learning that the Company would not issue stock and that the stock and right to dividends or earnings thereon was supposedly represented by the said resolutions, Exhibit A, the Plaintiff demanded of the Defendant the return of the premium paid and the Plaintiff tendered and does hereby tender to the Company return of said policy which has never been accepted under the provisions of SDC 31.0603(1)."

"That by reason of the fraud and deceit of the Defendant Company, all as set forth above, the Plaintiff sustained a loss of $———, the same being the direct

and proximate cause of the deceit, fraud and false representations of the Defendant Company to this Plaintiff upon which he relied."

Judgment is asked in the sum alleged, which was the amount of the premium paid, with interest from the date of its payment together with an allowance of punitive damages.

Where a party has been induced to enter into a contract by false and fraudulent representations, upon acquiring knowledge thereof, he must elect whether to rescind the contract because of the fraud or affirm it and claim damages. 17 C.J.S. Contracts § 167; 12 Am.Jur., Contracts, § 146. We have frequently recognized this rule. Northwestern Mut. Hail Ins. Co. v. Fleming, 12 S.D. 36, 80 N.W. 147; Lunscheon v. Wocknitz, 21 S.D. 285, 111 N.W. 632; Union Nat. Bank of Columbus, Ohio v. Mailloux 27 S.D. 543, 132 N.W. 168 and Kerr v. Stauffer, 59 S.D. 83, 28 N.W. 156. In the sense that one of these theories of recovery is premised on the repudiation of the contract and the other on its affirmance, they are inconsistent. Helleckson v. Alick, 61 S.D. 546, 250 N.W. 36. However, this rule applies only when there is an existing contract.

■■ In opposing defendant's motion, counsel for the plaintiffs took the position that in these actions they were not required to either affirm or disaffirm the policies of insurance because there were no contracts. It was his view that because of defendant's fraud the policies were void. In this he was in error. In the Sabbagh case, we said: "The cases generally seem to take it for granted that contracts of insurance procured by the fraud of the insurer or its agents are not void, but only voidable at the election of the insured." SDC 10.0302 declares: "Consent which is not free is not void but voidable and may be rescinded in the manner prescribed by the statutes on rescission." This enactment affords to the defrauded party the option of affirming a contract so procured. Williston on Contracts, Rev. Ed., Vol. 5, § 1526.

■ The Sabbagh case also makes it clear that in the described circumstances, in addition to the remedies of a suit for damages for fraud in procuring the contract or an action seeking rescission of the contract, a third course of action is available

to the defrauded party. He may rescind the contract by his own act, as authorized in SDC 10.0804, and sue at law for what he parted with by reason of the fraud. This remedy is not a suit on the contract because that has been done away with by the re-scission. It is often referred to as a suit on a rescission to dis-tinguish it from a suit for a rescission, such as is provided for in SDC 1960 Supp. 37.07. See comment in 21 Cal. L. Rev. p. 130.

■ ■  Manifestly, the pleadings of the plaintiffs are not models of precision or clarity. However, the defendant by not seeking to have them made more definite as authorized in SDC 1960 Supp. 33.1002, waived this objection. Viewing these com-plaints charitably as we are required to do in this posture and treating some portions as surplusages, we think they allege a cause of action on a rescission. The pleadings sufficiently indicate that the plaintiffs had unilaterally rescinded the policies before bringing these suits. Accordingly, it was not error to deny defen-dan't motion to require plaintiffs to elect whether they were affirm-ing or disaffirming the contracts.

■  Defendant next contends that the claimed rescissions were not timely. In SDC 10.0804 it is provided:

> "Rescission, when not effected by consent can be ac-complished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:
>
> "(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind; and
>
> "(2) He must restore to the party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

To reproduce here the evidence concerning this issue in these seven cases would unduly extend this opinion and serve no useful purpose. We have reviewed the record with care and are of the

opinion that it clearly shows that plaintiffs rescinded promptly upon discovering the facts which entitled them to rescind and after they were aware of their right to rescind. Beatty v. Depue, 78 S.D. 395, 103 N.W.2d 187.

■ In this connection it is also urged that the plaintiffs failed to restore what they had received as required by SDC 10.0804(2). This has reference to the fact that they had received protection under the policies and did not offer to pay for the same. Concerning this we said in the Sabbagh case "The premiums received by defendant included coverage during the time the policies were in force. At the time of rescission, plaintiff did not have in his possession anything of value to be restored to defendant." Consequently, plaintiffs' rescissions were effective without a tender. Moreover, if the tender claimed is money, there is increasing support for the view that restoration should not be required because such performance can be credited in partial cancellation of the injured party's claim. See Vavricka v. Mid-Continent Co., 143 Neb. 94, 8 N.W.2d 674, and authorities cited therein.

■ Two of the policies sued on were issued to minor children. The premiums on these were paid with their personal checks, but their father, Lester Main, carried on all of the negotiations leading to the purchases. Defendant's remaining contention is that there can be no recovery on them because the two minors themselves did not rely on the representations or statements made by the defendant or its agent. We think this position untenable.

While no claim is made that the father was the agent for his two sons in securing these policies we think that relation somewhat analogous to the situation here present. The defendant knew that he was acting for and on their behalf and that the policies were being purchased for them. In the law of agency it is recognized that, if in negotiations with an agent for a disclosed principal, a fraud is perpetrated on the agent as to the matters entrusted to him, the same would be a fraud on the principal, 2 Am.Jur., Agency, §434; 3 Am. Jur., 2d, Agency, § 334; 3 C.J.S. Agency § 287. There seems to us no valid reason why the fraud perpetrated on this father is not a fraud on these minor sons.

Affirmed.

ROBERTS, J., concurs.

HANSON, P.J., and BIEGELMEIER and HOMEYER, JJ. (concurring).

The measure of recovery not being at issue here we concur in the opinion with the understanding that references to the Sabbagh opinion are not an affirmance of the views expressed therein on that subject.