Eugene JONES and Barbara Jones, Plaintiffs and Appellees,

v.

Charles F. BOHN and Judith Bohn, Defendants and Appellants.

No. 13254.

Supreme Court of South Dakota.

Argued May 27, 1981.

Decided Oct. 21, 1981.

Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, for plaintiffs and appellees.

Brian B. Meyer, Onida, for defendants and appellants.

FOSHEIM, Justice.

This action was brought by the plaintiffs, Eugene and Barbara Jones, on alternative counts of rescission, breach of warranty and negligence. The trial court found for the plaintiffs based on their claim of rescission. The defendants, Charles and Judith Bohn, appeal. We affirm.

This controversy relates to a home in Pierre, South Dakota, which appellees purchased from the appellants. Subsequent to the purchase, the house became uninhabitable due to severe settling problems.

The terrain where the home is located was hilly until developed for building lots during the early 1970s. That was before the appellants came to Pierre. Prior to development a large natural drainage channel, twenty to twenty-five feet deep, ran in a westerly direction in the area of this lot. In the process of development, this channel was filled with dirt and other materials. Aerial photographs taken before and after development show that the north end of the house rests on the filled channel.

The home was built for the appellants by a local contractor in 1975 in accordance with plans supplied by the contractor, as modified by architects employed by the ap-

pellants. Paragraph XI(12) of the contract specifies: "The basement shall have 8" by 16" footings, 8" wall with vertical rod 4 feet on center, four rows of horizontal rod, and the back filled and rough graded." The contractor testified the foundation was the type he normally installed to support houses in the area. In response to a question whether the appellant, Mr. Bohn, participated in arriving at the specifications for the house, the contractor testified: "We agreed on everything. We went over, you know, all the areas and it isn't something, you know, that I just drew up completely myself."

In the spring of 1977 the appellees were anticipating a move to Pierre. They were shown the appellants' home by a local real estate agent with whom it was listed for sale. At that time there was no cracking or other indication that the structure would have serious settling problems. While appellees were considering the purchase they learned that the "Thompson house," located a short distance to the north had settling problems. They became concerned whether the appellants' home might suffer a similar fate. They discussed the matter with the real estate agent and the appellants who laid their fears to rest. A contract to purchase ensued in April of 1977. Under the terms of the agreement, appellees made the final payment on February 1, 1978.

The appellees did not make their anticipated move to Pierre. The appellants arranged to rent the home from the appellees for $625.00 per month until their new home was ready. This arrangement continued until the appellants vacated the residence in October 1978.

Approximately one week after the appellees made the final payment, the appellants notified them that a crack had developed in the basement floor. Mr. Jones came to Pierre to examine the crack. Thereafter, he engaged a local contractor to install a drain field in the front yard and to put support timbers in the basement. The appellees were then under the impression that

the cracking could be repaired without substantial cost or reconstruction.

In the fall of 1978 the same contractor dug a trench along the north end of the house to the depth of the footings and then probed the soil beneath. The soil beneath the footings was found to be "like straw" with insufficient bearing capacity to support the house.

Based on the contractor's findings and the consequent substantial reconstruction and installation of supports required to repair the house, the appellees, by letter dated November 7, 1978, rescinded the contract, tendered back the house, and demanded repayment of their purchase money from the appellants.

The trial court found that the foundation cracking discovered in February 1978 had continued to the date of trial, in May of 1980. By then, the north end of the house had settled five or six inches causing considerable damage to the floors, walls, and structural integrity of the building. The trial court found that repairing the house could begin only after the settling problem was resolved, which would necessitate tearing out the present basement floor and walls on the north end of the house and installing piles, caissons or concrete supports below the basement floors and footings. The trial court concluded that the structure was presently uninhabitable.

The appellees based their action for rescission on SDCL 53–11–2,[1] alleging material failure of consideration through fault of the defendants, and fraud by misrepresentation.

■ At the outset we briefly note that an action for rescission may be brought as a legal action pursuant to SDCL ch. 53–11, or as an equitable action pursuant to SDCL ch. 21–12. If the action is in equity, the rescission is accomplished by court decree. When an action is brought pursuant to SDCL ch. 53–11, however, the rescission has already been accomplished by the unilateral act of one of the parties to the contract. The rescinding party brings the legal action for rescission to enforce his rights arising from the rescission. *Halvorson v. Birkland*, 84 S.D. 328, 171 N.W.2d 77 (1969) (Rentto, J., dissenting); *Main v. Professional and Business Men's Life Ins. Co.*, 80 S.D. 288, 122 N.W.2d 865 (1963); *Sabbagh v. Professional & Business Men's Life Ins. Co.*, 79 S.D. 615, 116 N.W.2d 513 (1962). Since the present action is a legal action on a rescission, we must determine whether the appellees' rescission complied with statutory requirements.[2] *See, Sabbagh* 116 N.W.2d at 517.

■ The trial court found that the plaintiffs were reasonably diligent in exercising their rights to rescind. The appellees rescinded by letter dated November 7, 1978. That was shortly after discovering the facts which justified the rescission. That letter also contained the required offer to restore.

1. SDCL 53–11–2 reads:

A party to a contract may rescind the same in the following cases only:
(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;
(3) If the consideration becomes entirely void from any cause;
(4) If such consideration before it is rendered to him fails in a material respect from any cause; or
(5) By consent of all the other parties.

2. SDCL 53–11–3 provides:

Rescission, when not effected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with §§ 53–11–4 and 53–11–5.
SDCL 53–11–4 provides:
The party rescinding a contract must rescind promptly, upon discovering the facts which enable him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind.
SDCL 53–11–5 provides:
The party rescinding a contract must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

In light of these facts it is clear that the appellees met the statutory requirements of rescission.

The court concluded that plaintiff rescinded the contract as of November 19, 1978 and that there was a substantial failure of consideration because of the settling. Conclusion of law No. 2 states that "[a]s between the parties to the sale of the house, the fault for the failure of consideration is that of the Bohns, although the Court is not making any decision in this conclusion of law as to the possible liability to the Bohns of other parties." The trial court's decision is therefore seemingly based on SDCL 53–11–2(2) which allows rescission of a contract "[i]f through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part."

It appears to be undisputed that the consideration failed. A conclusion of law from the facts found states that the fault for the failure of consideration is the defendants. Appellants contend, however, that since there is no finding of fact upon the issue of fault, the conclusion of law is unsupported and the requirements of SDCL 53–11–2(2) were not met.[3] SDCL 15–6–52(a) requires the trial court to "find the facts specially and state separately its conclusions of law thereon." We have held, however, that "a fact found by the court although expressed as a conclusion of law will be treated on appeal as a finding of fact. While the statement referred to is designated as a conclusion of law, it contains an ultimate finding of fact as well as a conclusion of law." *State v. Prosser*, 78 S.D. 35, 98 N.W.2d 329, 332 (1959) (citations omitted). The conclusion of law before us likewise contains the ultimate finding required by the statute that the defendants were at fault. We accordingly conclude that the findings of fact were adequate.

We have reviewed the other issues presented and conclude they are either without merit or are unnecessary to decide in view of the conclusions herein reached.

The judgment is affirmed.

All the Justices concur.

---

**3.** We note that while there is no specific finding on the issue of fault, read in their entirety the findings indicate fault on the part of the defendants.