No. 14752

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

JOHN KINJERSKI,

        Plaintiff and Appellant,

   vs.

FRITZ LAMEY, individually and as
President of K & L LIVESTOCK,INC.,
a corporation, and PHILLIPS CREEK RANCH,
a corporation,

        Defendants and Respondents,

   vs.

ANNA KINJERSKI,

        Third Party Defendant and Appellant.

---

Appeal from: District Court of the Nineteenth Judicial District,
            Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellants:

        Morrison Law Offices, Missoula, Montana
        Frank Morrison, Sr., argued and Douglas Bauxbaum argued,
         Missoula, Montana

    For Respondents:

        Fennessy, Crocker, Harman & Bostock, Libby, Montana
        Thomas Bostock argued, Libby, Montana

---

Submitted: November 1, 1979

Decided: DEC 27 1979

Filed: DEC 27 1979

_Thomas J. Kearney_
                 Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff John Kinjerski brought this action to recover 49 head of cows, $22,000 earnest money, and seeking an accounting of assets held by K & L Livestock, Inc. Defendants, Fritz Lamey and Phillips Creek Ranch, Inc. answered denying Kinjerski was entitled to relief and alleging several affirmative defenses. Defendants also counterclaimed, naming plaintiff's wife Anna as a third-party defendant and alleging that plaintiff and his wife were attempting to defraud defendants of the 49 head of cows. The jury returned a verdict in favor of the defendants on the issue of ownership of the 49 cows and the accounting, and in favor of plaintiff on the issue of the $22,000 earnest money. Plaintiff's motion for a new trial was denied and from that denial they appeal on the issue of the ownership of the 49 cows. Defendants' cross-appeal on the issue of the $22,000 earnest money. Neither party appeals from denial of the accounting.

In 1976 defendants Lamey and Phillips Creek Ranch were urged by the Bank of Columbia Falls to take remedial steps to reduce outstanding indebtedness to the Bank. Consequently, in order to raise money, Lamey decided to form a joint venture with Kinjerski. The joint venture was to be known as K & L Livestock, Inc. The principal assets of K & L were to be a certain number of registered purebred Hereford cattle and a parcel of land, both to be purchased from the Ranch.

The agreement contemplated that Kinjerski and Lamey would purchase a parcel of land from the Phillips Creek ranch by putting up $120,000 and assuming the outstanding mortgage on the land. Each party was to pay $60,000 of the $120,000 down payment. Kinjerski contributed an initial $22,000 as earnest money while Lamey made no cash contribution to this end. Later when the contemplated purchase of the land did not transpire, Lamey drew an instrument

- 2 -

acknowledging a debt of $22,000 to Kinjerski to be paid when the property was sold.

Concerning the cattle that were to be purchased by K & L, Kinjerski was to purchase some cattle from Lamey and the Phillips Creek Ranch. Lamey drew a bill of sale stating that Lamey and the Phillips Creek Ranch sold to Kinjerski 131 head of cattle (80 cows, 31 bulls and 20 calves) for a total price of $59,000 of which $24,000 was paid leaving a balance of $35,000.

Kinjerski claimed that he never received 49 of the 80 cows provided in the bill of sale. In April 1978, Kinjerski demanded these 49 cows from Lamey. Upon Lamey's refusal, Kinjerski filed the present action.

Prior to trial, Kinjerski's attorneys made a motion in limine to disallow any parol evidence to impeach, vary or contradict the terms of the bill of sale. This motion was denied without prejudice to later objections during the trial. Despite an objection during trial Lamey was allowed to testify that he had not received the $24,000. He was also allowed to testify that the parties intended that only 31 cows be transferred, that the other 49 cows were dead at the time that the bill of sale was written, and that the purpose of the arrangement was to boost Kinjerski's borrowing power. Kinjerski, in turn, testified that he paid the $24,000 and that the bill of sale constituted the entire transaction between the parties.

The jury found that Lamey did not owe Kinjerski the 49 cows. They also found that Lamey owed Kinjerski $22,000 arising out of the purported agreement on the sale of the land.

We will summarize the controlling issues on appeal in this manner:

(1) The admissibility of evidence under the parol evidence rule.

(2) Sufficiency of the evidence to support the judgment

- 3 -

of $22,000 in favor of Kinjerski's.

(3) Sufficiency of the evidence to support judgment in favor of Phillips Creek Ranch on ownership of the cattle.

The parol evidence rule in Montana has been stated as follows:

> "'"The principle is well-established and of general application, subject to certain exceptions, that <u>when a contract has been reduced to writing the contents of such writing cannot be added to, contradicted, altered, or varied by parol or extrinsic evidence</u>, and that such writing supersedes all oral negotiations concerning its matter which preceded, accompanied or led up to its execution. This was the rule at common law, and has been embodied in the statute law of this state . . ."'" W. River Equip. v. Holzworth (1959), 134 Mont. 582, 588, 335 P.2d 298.

Different aspects of this rule have been codified in Montana at sections 28-2-904, 28-2-905 and 28-2-1602, MCA.

The parties in this case do not dispute the fact that the rule applies to the bill of sale. Respondents do contend, however, that the testimony which varied the terms of the bill of sale, was admissible under one or more of three exceptions to the parol evidence rule. Those exceptions are ambiguity, fraud, and failure of consideration.

Under section 28-2-905(2) evidence may be introduced to explain an extrinsic ambiguity in a written agreement. In the instant case we find no ambiguity which would call for the application of this exception.

Section 28-2-905(2) also allows the introduction of parol evidence to establish fraud. The case law in Montana is to the same effect. Goggan v. Winkley (1970), 154 Mont. 451, 459, 465 P.2d 326. Lamey was allowed to testify that the purpose of putting the figure of 80 cows instead of 31 cows on the bill of sale, was to boost Kinjerski's borrowing power. Lamey contends that this purpose constitutes fraud and that he was correctly permitted to give testimony that 49 of the cows were dead.

- 4 -

The case of Higby v. Hooper (1950), 124 Mont. 331, 221 P.2d 1043 is closely analogous to the instant case and is controlling here. In the Higby case there was a written contract to the effect that the defendant would build a house for the plaintiffs for a certain sum. The defendant was allowed to testify at trial that the contract price was merely an estimate to aid the plaintiffs in securing a loan and that there was an oral argreement that he was to receive costs plus 10%. The judgment was for defendant at trial court. This Court reversed, saying:

> "Under certain circumstances, none of which is here present, a person may show that the document in question was intended to serve the purpose of a mere jest, joke or sham. 'But a just policy would seem to concede this only when the pretense is a morally justifiable one (as, to calm a lunatic or to console a dying person). When it is <u>morally beyond sanction</u>, or aims at an <u>evasion of the law</u> or a deception of other persons, by intention of the parties, that intention will not be given effect.' 9 Wigmore on Evidence, 3d Ed., sec. 2406, subd. (1), pp. 16, 17.

> "The law does not allow parties to a contract to show that it was got up as a sham to deceive and defraud. Graham v. Savage, 110 Minn. 510, 126 N.W. 394, 396, 136 Am.St.Rep. 527, 19 Ann.Cas. 1022. So here the defendant will not be permitted to defeat his own solemn written contract by saying that it was given solely for a fraudulent and deceitful use." 124 Mont. at 350.

> Lamey was allowed to testify as follows:

> "Q. Your testimony is that you were both aware of those 49 cows not alive? A. Yes.

> "Q. What was the reason for that?

> " . . .

> "A. Well, it was just mainly to boost John's borrowing power.

> "Q. Was that specifically discussed at that time? A. Well, that is the only reason he could have wanted them for."

In other words, Lamey was allowed to testify that his own bill of sale was a sham. Under Higby this testimony is not

admissible under the fraud exception. It was error for this testimony to be admitted.

There is another reason why the defendant may not rely upon the fraud exception to the parol evidence rule. Under Rule 9(b), M.R.Civ.P. the circumstances constituting fraud must be stated with particularity. The elements of fraud under Montana law are:

> " . . . (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the intent that it should be acted upon in the manner contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the right of the hearer to rely thereon; and (9) the hearer's consequent and proximate injury or damage." Hutton v. Ming (1970), 155 Mont. 149, 153, 469 P.2d 688.

In the present case, the defendant's answer in one instance makes a bald assertion of fraud. In another instance it merely states the fact that the recitation of the 49 additional cattle on the bill of sale was at Kinjerski's request and that the institution of this action constitutes fraud. Nowhere in the answer or counterclaim does it appear that Lamey was ignorant of the fact that 49 of the cows were dead or that he relied upon the truth of any of Kinjerski's representations.

The defense of fraud was not properly pleaded and it may not be used as a defense or an exception to the parol evidence rule under the facts of this case.

Respondents next allege that Lamey's testimony that he did not receive the $24,000 was admissible under the failure of consideration exception to the parol evidence rule.

> "It is frequently held that a want or failure of consideration, either whole or in part, may be shown by parol, and that this is true at least as between the original parties to the instrument in question." 32A C.J.S. Evidence §948.

This exception, however, must be limited in its application. The rule in Montana was stated in Warner v. Johns (1949),

122 Mont. 283, 201 P.2d 986:

> "The rule with a long line of supporting authorities is stated in 32 C.J.S., Evidence, sec. 958, page 889, as follows: 'Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgement of payment of a money consideration, and is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part, for a party has the right to make the consideration of his agreement of the essence of the contract, and when this is done the provision as to the consideration for the contract must stand on the same plane as the other provisions of the contract with reference to conclusiveness and immunity from attack by parol or extrinsic evidence . . .'" 122 Mont. at 288-289.

The recitation as to the $24,000 in the bill of sale in the instant case is more than the acknowledgement of payment of money consideration. It constitutes the central element of the contract. That is, 131 cattle for $59,000; $24,000 having been paid. Lamey's testimony that he did not receive the $24,000 varied the written terms of the contract. Lamey is not attempting to compel payment of the $24,000. He is seeking to escape the legal effect of the bill of sale. The testimony is inadmissible for this purpose. 32A C.J.S. Evidence, §956.

Defendants contend that the verdict as to the issue of cattle ownership is sustained by substantial credible evidence even if the parol evidence is disregarded. They contend that even if it were error to admit such evidence, that it was harmless error.

Lamey testified that 49 dead cows were added to the bill of sale in order to induce the bank to loan more money to Kinjerski. Lamey also testified that he did not receive the $24,000. Both of these items of testimony were inadmissible under the parol evidence rule. The jury found that Kinjerski was not entitled to 49 of the 80 cows listed on the bill of sale. From our review of the record we find that the jury could not have reached this

conclusion without relying on the wrongfully admitted evidence. Because this evidence was admitted, the plaintiff's rights were substantially affected. When such is the case, it cannot be said that this is harmless error. Ehni v. N.P. and White Pine Co. (1969), 152 Mont. 373, 381, 450 P.2d 882.

Finally, respondents contend that the verdict against them for $22,000 based on Lamey's guarantee to Kinjerski was not supported by substantial credible evidence. This written guarantee stipulated that Lamey did not owe the $22,000 to Kinjerski until the property was sold. There is no evidence that the property was sold.

The general rule is that a bill payable on condition does not mature until the performance of the condition. Where the time fixed, however, is for the convenience of the parties and the future event does not happen as contemplated the law implies a promise to pay in a reasonable time. 10 C.J.S. Bills and Notes, §245(d). In the instant case the $22,000 was to be repaid from the proceeds of the sale of the property. It is apparent that this provision was for the convenience of the parties. That is, the $22,000 would not be available until that time. Consequently, the reasonable time standard would apply. Obviously the jury must have found that a reasonable time had elapsed. They found for plaintiffs on this issue. The instrument itself provided substantial credible evidence that the money was owed to plaintiff. This supports the jury's verdict.

The verdict as to the $22,000 owed by Lamey to Kinjerski is affirmed. As to the issue of the ownership of the 49 cows, cause reversed and appellants awarded a new trial.

_____
Chief Justice

- 8 -

We concur:

_____

_____
John Conway Harrison

_____

_____
John C. Sheehy
Justices