No. 87-192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

WILLIAM A. SELVIDGE and VIRGIE
M. RENNER,

Plaintiffs and Appellants,

-vs-

MARCUS McBEEN and NANCY L. McBEEN;
ROBERT PAYNE; and PAYNE REALTY and
HOUSING, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lloyd E. Hartford, Billings, Montana

For Respondent:

Richard J. Carstensen, Billings, Montana
Richard W. Anderson; Anderson, Edwards & Molloy,
Billings, Montana

Submitted on Briefs: Dec. 17, 1987

Decided: February 8, 1988

Filed: FEB 8 1988

*Ethel M. Harrison*

—————————————————
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This claim of fraud comes to this Court from the Sixth Judicial District, Park County. Following a bench trial, defendants, Nancy McBeen, Robert Payne and Payne Realty and Housing, Inc. were dismissed from the suit. The trial court found that defendant, Marcus McBeen had fraudulently misrepresented the income of the property and business that he sold to plaintiffs. Plaintiffs/appellants Selvidge and Renner were awarded $62,238 in actual and $10,000 in punitive damages. They appeal the amount awarded and the dismissal of defendants Nancy McBeen, Robert Payne and Payne Realty and Housing, Inc. In addition, they appeal the failure of the court to award them attorney fees. Defendant Marcus McBeen cross-appeals the judgment against him.

We affirm the District Court.

The issues presented for our review are as follows:

1. Whether the District Court erred in dismissing Robert Payne and Payne Realty and Housing, Inc. from this lawsuit.

2. Whether the District Court erred in dismissing Nancy McBeen from this lawsuit.

3. Whether the District Court erred in the amount of damages awarded.

4. Whether the District Court erred by failing to award reasonable attorney fees to appellants.

McBeen cross-appeals with issues 5-7:

5. Whether the legal requirements to prove fraud were supported by the facts.

6. Whether appellants alleged losses were proximately caused by Marcus McBeen's alleged misrepresentations.

7. Whether punitive damages were properly awarded.

In 1982, defendants Marcus and Nancy McBeen purchased the Johnson-Gardner Saloon in Gardiner, Montana. They paid $6,000 plus an exchange of property for the saloon. They operated the saloon from February 2 to November 25, 1982, then closed for the winter due to slow business. Since 1977, the saloon had changed hands three times. The sales prices were $57,500 in 1977, $70,000 in 1978, and $60,128 in 1980.

The McBeen's hired managers for the saloon and had very little to do with the operation of it except that Nancy McBeen wrote some payroll checks and did some bookkeeping.

McBeens made $10,000 to $20,000 of building improvements during the time they owned the saloon.

In January, 1983, Marcus McBeen contacted Robert Payne and Payne Realty and Housing, Inc. about listing the business for sale. The purchase price was listed at $120,000 plus cash for saleable inventory, with interest at 11%. At the time of the listing, Marcus McBeen told Payne that the saloon grossed $71,233 in a little less than a 10 month period. The purchase price included the saloon building, a rental house, the land, bar equipment and fixtures and a Montana all beverage license.

After personally viewing the property, Payne ran an add in the Billings Gazette as follows:

Liquor Bar

Located in Gardiner, MT. Recently remodeled, living quarters, priced to sell at $120,000 with good terms.

Appellants, William Selvidge and Virgie Renner saw the ad, drove to Gardiner and met with Marcus McBeen. They discussed the sale of the business with McBeen and saw the property although the bar was not operating at that time.

- 3 -

Appellants were originally from California, where Selvidge owned and managed a bar/restaurant and Renner worked as a waitress for many years. Appellants investigated other business prospects in Gardiner and continued to show an interest in the Johnson-Gardner Saloon.

After meeting with McBeen, appellants and Marcus McBeen met with Robert Payne. Payne relayed to appellants the gross sales figure for 1982 of $71,233. Marcus McBeen told them that sales had actually been significantly higher, eventually stating that $83,779 was the correct amount.

On February 24, 1983, after numerous (12-14) visits to Gardiner, appellants offered McBeens $110,000 with 10% interest for the saloon. McBeens and appellants reached an agreement on the purchase price for $115,000 with 10½% interest. Prior to the sale, Payne cautioned the appellants that he could not vouch for the business figures as all anyone had to rely on was Marcus McBeen's statements. The records from the previous owners were not available and McBeens' records were allegedly at their tax accountants, being used to prepare their 1982 taxes. Payne advised appellants to seek their own legal counsel and went so far as to attach the following special provisions to the final sales contract.

This sale is subject to the following items:

1. Buyers being able to inspect and be satisfied with the books (income and expenses) for the year 1982.

2. Buyers being able to have legal counsil [sic] review all previous contracts that are still in effect and a preliminary title policy on the property and being fully satisfied with them.

Appellants demanded that McBeens decide within three days after their offer. On February 26, 1983, the McBeens

accepted and a "Buy/Sell Agreement" was executed containing the following standard clause:

> 9. Purchaser enters into this agreement in full reliance upon his independent investigation and judgment and there are no verbal or other agreements which modify or affect this agreement.

On March 14, 1983, prior to the execution of the final contract for deed, Marcus McBeen met with appellants at Payne's office to review the records of the bar. The man who supplies poker and game machines to all Gardiner bars stopped by and talked briefly with appellants, presumably about the machines which were in the Johnson-Gardner Saloon at the date of the sale. At this meeting, appellants were given a typewritten sheet titled "Johnson-Gardner 1982 Operating Statement." Payne again informed appellants that the figures were unsubstantiated by anyone except Marcus McBeen.

Following this meeting on March 31, 1983, an attorney for both parties drew up a formal contract for deed. Paragraph VII of the contract contained the following provisions:

> Examination of Property. The purchasers declare they are purchasing this property on their own examination and judgment and not through any representations to them made by the sellers or their agents as to location, value, future value, income therefrom or as to its production.

After about four months of operating the saloon, appellants advertised it for sale. They asked Robert Payne to list it for $225,000. He refused to list it at such an exorbitant price, even though appellants told him they thought it was a fair price. Appellants ended up listing it for $225,000 themselves. They could not sell the saloon for the desired amount, so appellants continued to own and operate it until the time of trial.

When the saloon failed to make as much as appellants anticipated, they filed suit alleging fraud and misrepresentation by Marcus and Nancy McBeen, Robert Payne and Payne Realty and Housing, Inc.

In the course of discovery, appellants became aware that McBeen's "1982 Operating Statement" was, as described by a CPA who reviewed the business records, "grossly inaccurate." The District Court made very thorough and elaborate findings with regard to Marcus McBeen's alleged fraud and misrepresentations and appellant's damages. These will be enumerated and discussed further in the following opinion.

## Issue No. 1

The appellant's first issue alleges error by the District Court for dismissing Robert Payne and Payne Realty and Housing, Inc. from this lawsuit.

After hearing a nonjury trial, the District Court made 63 findings of fact. Included in the findings of fact were:

> 29. Payne had no knowledge of and made no representation to plaintiffs concerning the profitability of the bar. Neither did he conceal anything he knew of from plaintiffs.
>
> . . .
>
> 31. Plaintiffs knew that Payne himself had not audited the books and that all figures presented came exclusively from Marcus McBeen. Plaintiffs had the right to demand even further records had they wanted them, and they were aware of that right. Plaintiffs by their own testimony admit that they entered into and closed the transaction with fewer records than they had hoped to see.
>
> 32. Plaintiffs did not rely on Robert Payne for any representations, assurances or confirmation as to the profitability of said business, and understood that Payne Realty and Housing Inc., acting through Robert Payne, was McBeens' real estate agent in the transaction, whose function it

- 6 -

was to bring the parties together, show the property, and arrange for the preparation of the closing documents.

33. Payne at no point prior to the closing of the transaction had any access to McBeens' 1982 tax returns. In fact, the returns had not yet been prepared, and plaintiffs knew it. Plaintiffs voluntarily completed the transaction, signed the contract for deed, and thereby waived any reliance upon tax returns.

34. The property which plaintiffs purchased was exactly what they intended to buy. All buildings, lands, fixtures, licenses and appurtenances were substantially as represented by McBeens, there were no hidden or undisclosed defects, and Virgie Renner expressly testified plaintiffs had no complaint as to the physical assets.

As a consequence of these findings of fact, the District Court concluded that "Plaintiffs failed to prove any claim for damages against Robert Payne individually or against Payne Realty and Housing, Inc., the complaint against them should be dismissed with prejudice, and defendants Payne should have judgment against plaintiffs for their allowable costs of $944.05."

In a nonjury trial, the District Court judge makes the findings of fact and conclusions of law. Tolson v. Tolson (1965), 145 Mont. 87, 399 P.2d 754. Findings of fact will not be overturned unless there is a clear preponderance of evidence against them. Round v. Reikofski (Mont. 1985), 699 P.2d 72, 42 St.Rep. 634. Also, we view the findings in a light most favorable to the prevailing party. General Mills, Inc. v. Zerbe Bros, Inc. (Mont. 1983), 672 P.2d 1109, 40 St.Rep. 1830. The appellants have the burden of showing by a clear preponderance of the evidence that the findings of fact are incorrect before this Court will disturb those findings. Cameron v. Cameron (1978), 179 Mont. 219, 587 P.2d 939.

The court's dismissal of defendants Payne fell within the District Court's powers under Rule 41(b), M.R.Civ.P.:

> . . . After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff . . .

In the present case, Payne recommended that the appellants hire their own attorney, as he could not verify the amounts which Marcus McBeen alleged to be the true and accurate accountings of the bar's business. Section 37-51-321, MCA, prohibits real estate brokers from committing various acts. The key to these acts is knowledge and intent. The evidence presented in this case supports the finding that Payne had no knowledge of the accurate accounting figures relating to the saloon's business, did not intentionally misrepresent any information to appellants, nor did he advertise in a misleading or untruthful manner. Payne acted in good faith as realtor and was properly dismissed from this action.

Issue No. 2

Appellants contend that it was also error for the District Court to dismiss Nancy McBeen from this suit.

The District Court found as fact that "[t]here was no evidence presented to establish that Nancy McBeen knew of any of said misrepresentations, communicated the inaccurate information to anyone, or participated in any way in any fraud or deceit. She should therefor be and was dismissed as defendant at the end of plaintiffs case."

When reviewing a Rule 41(b) dismissal of a defendant, the reviewing court must view the evidence in a light most favorable to the plaintiff. However, this does not relieve the plaintiff of the burden of producing evidence in support of each element essential to recovery. Nixon v. Huttinga (1974), 163 Mont. 499, 501, 518 P.2d 263, 265. Appellants showed only that Nancy McBeen (1) was co-owner of the Johnson-Gardner Saloon before the sale to appellants; (2) had some responsibilities for bookkeeping for the saloon; and, (3) was present at a few of the meetings of McBeens and appellants concerning the sale of the saloon.

Nancy McBeen, along with her husband, was accused of fraud and misrepresentation. The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speakers knowledge of the truth; (5) the intent that it should be acted upon in the manner contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right of the hearer to rely thereon; and (9) the hearer's consequent and proximate injury or damage. Hutton v. Ming (1970), 155 Mont. 149, 153, 467 P.2d 688, 690.

The circumstances constituting fraud must be stated with particularity. Kinjerski v. Lamery (1979), 185 Mont. 111, 117, 604 P.2d 782, 785. Appellants presented only a general assertion of fraud. They presented no evidence establishing the presence of any one of the elements of fraud. As such, we hold that Nancy McBeen was properly dismissed as a defendant at the close of appellant's argument in the lower court proceeding.

## Issue No. 3

Appellants' next contention is that the District Court erred in its award of damages.

Appellants were awarded $62,238 in compensatory damages and $10,000 in punitive damages. The applicable statutes which allow for these awards are § 27-1-317 and § 27-1-220, MCA, respectively. We do not agree with appellants' argument that the compensatory damages award was too low. The District Court found that appellants suffered annual losses of $31,338 and reasonable wage loss of $30,900 based on their income tax returns. The court found further that appellants did not suffer any loss of opportunity to earn income on their investment, nor did they pay an excessive amount for the saloon property and business. These findings are supported by the evidence of past and present business records for the Johnson-Gardner Saloon and by evidence of the value of other comparable businesses in Gardiner.

We also disagree with the allegation that the punitive damages awarded were too low. The court found that Marcus McBeen's acts of misrepresentation to appellants were fraudulent. To deter future similar behavior, an award of $10,000 in punitives was awarded to appellants. Section 27-1-221(7)(b), MCA, outlines the findings necessary for an award of punitive damages:

> (b) When an award of punitive damages is made by the judge, he shall clearly state his reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters:
>
> (i) the nature and reprehensibility of the defendant's wrongdoing;
>
> (ii) the extent of the defendant's wrongdoing;
>
> (iii) the intent of the defendant in committing the wrong;
>
> (iv) the profitability of the defendant's wrongdoing, if applicable;

(v) the amount of actual damages awarded by the jury;

(vi) the defendant's net worth;

(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

(ix) any other circumstances which may operate to increase or reduce, without wholly defeating, punitive damages.

In its findings of fact and conclusions of law, the District Court concluded that:

I. The actions of defendant Marcus McBeen in representing and warranting that the operating statement of the Johnson-Gardner Saloon for 1982 as a true and accurate statement of the gross income and expenses were false, deceitful of material facts, and constitute fraud.

J. Defendant Marcus McBeen intended that plaintiffs should rely upon said representations. Plaintiffs were ignorant of the falsity of the representations, did in fact rely on them as they had a right to do, and thereby suffered injury.

K. Plaintiffs William Selvidge and Virgie Renner are entitled to damages of $31,338 for net business loss on said business for the years 1983 through 1985, plus $30,900 for lost wages during said time, making a total of $62,238.00, which amount will compensate them for all the detriment proximately caused by Marcus McBeen's actions.

L. Plaintiffs have not established that they are entitled to have said contract reformed or the price paid for the property and business reduced.

M. Plaintiffs are not entitled to an award for loss of opportunity to earn a return on their investment and capital as that would be a duplication of the damages referred to in

conclusion K above, and because the value of the real and personal property and business was not excessive or grossly disproportionate to the price paid by plaintiffs.

N. Plaintiffs are entitled, however, to punitive damages against Marcus McBeen in the sum of $10,000.00 to deter similar future conduct by him.

. . .

P. Plaintiffs were not contributorily negligent herein, and their damages should not be reduced.

Because of some seemingly contradictory findings of fact with these conclusions of law, the District Court followed up the conclusions with an explanatory comment.

<u>EXPLANATORY COMMENT</u>

In case the foregoing findings or conclusions seem somewhat inconsistent, the court finds that while plaintiffs did make a thorough investigation of their own prior to purchasing the saloon and agree in the contract of sale they were relying on that and not on any representations of the sellers, and while the court also finds plaintiffs did not pay a grossly disproportionate or unreasonable price for the premises and business, and that they did have opportunity to examine McBeens records, I still find McBeen materially misrepresented the gross sales he reported in the operating statement he prepared, and because plaintiffs were entitled to and did rely on this, they are entitled to the damages proximately caused thereby, plus moderate punitive damages. However, plaintiffs seek duplicative, speculative and unjustified amounts of damages, both actual and punitive, and I have awarded only those that are reasonably certain. Ms. Renner's inconsistent and exaggerated testimony has caused me to reduce somewhat the punitive damages I might have otherwise awarded.

The conclusions of law considered in light of the facts of this case and the judges explanatory comment satisfies the statutory requirements for punitive damages. We will not

disturb the punitive award, nor the award for compensatory damages.

Issue No. 4

Lastly, appellants allege that the District Court erred in failing to award attorney fees.

In the absence of a contractual agreement or specific statutory authority, attorney fees are not recoverable as costs by the prevailing party. State ex rel. Wilson v. Department of Natural Resources and Conservation (1982), 199 Mont. 189, 648 P.2d 766, 769; § 25-10-301, MCA.

In this case, appellants recovered on their allegation of fraud and misrepresentation--a tort. Their testimony indicates that they are satisfied with all the buildings and fixtures which they purchased under contract. The court found the purchase price to be reasonable. Because they recovered under tort law, appellants were awarded $10,000 punitives. There is no statutory authority nor contractual agreement which gives rise to an award of attorney fees in this case. We affirm the District Court's refusal to award attorney fees to Selvidge and Renner.

Issue No. 5

McBeens' first issues raised on counter-claim alleges that the finding of fraud was not supported by the facts.

The elements of fraud were outlined under issue no. 2 above. The District Court's relevant findings of fact, which were supported by the evidence include:

45. Defendant Marcus McBeen knew that the saloon business in question did not have gross sales in 1982 of $83,779 or gross rental income of $2,100.

46. McBeens said operating statement (Ex. 11), financial statement (Ex. 14), and 1982 income tax return (Ex. 15), were all prepared by Marcus McBeen. He is an experienced businessman, and engaged in and familiar with the management and running of several different and diverse businesses

- 13 -

while in Gardiner, namely, a lumber yard, real estate business, home construction, solar heating, and a saloon.

47. The documents referred to in finding 46 were prepared by McBeen to purportedly accurately reflect his total business income and financial status, and were prepared for use of lending institutions and Internal Revenue Service, and only gratuitously given plaintiffs according to Marcus. The court finds, however, that the operating statement is not only inaccurate and vague, but misleading to anyone to whom he submitted it.

. . .

49. Plaintiffs had the right to rely upon the representation of defendant Marcus McBeen concerning the financial condition of business in question, and in fact plaintiffs did rely thereon, as well as on their own experience, observations and investigation, purchasing the business.

50. The representations made by Marcus McBeen to Selvidge and Renner were false and were material, and he intended plaintiffs to rely thereon to induce them to purchase said saloon business.

51. Plaintiffs were ignorant of the falsity of defendant McBeen's representations at the time of the purchase, and as a result of his false representations and plaintiffs reliance thereon, plaintiffs suffered injury.

52. That once plaintiffs purchased the business and took possession, they operated it on a sound basis and increased their business some each year. However, they claim to have suffered annual losses as indicated by their partnership income tax returns (Ex. 2) including deductions for depreciation, as follows:

| | |
|---|---|
| 1983 . . . . . . . . . . | $11,023 |
| 1984 . . . . . . . . . . | 14,173 |
| 1985 . . . . . . . . . . | 6,142 |
| Total . . . . . . . . . | $31,338 |

53. That plaintiffs have suffered loss of reasonable wages since purchasing the business of $30,900.

54. That plaintiffs losses mentioned in findings 52 and 53 are directly attributable to the misrepresentations and deceitful statements of Marcus McBeen.

. . .

57. That the court does find, however, that Marcus McBeen's omissions and representations in the sale were fraudulent and oppressive toward plaintiffs, and they should be awarded punitive damages of $10,000 to deter similar future conduct.

. . .

60. The only damages plaintiffs have established are from Marcus McBeen's tort of fraud, so that no attorneys fees are awardable on the contract to either side.

Appellants offer no evidence to contradict or show that these findings are clearly erroneous. We affirm the District Court on the issue of fraud.

McBeens' last two contentions alleging that appellants' damages were not caused by McBeens' misrepresentations and that punitive damages were improperly awarded have been adequately addressed in the previous discussion.

Affirmed on all issues.

_____
Justice

We Concur:

_____

_____
Justices

_____
Chief Justice

- 15 -