Michael J. O'CONNOR and Barbara M. O'Connor, Plaintiffs and Appellants,

v.

Vernell E. KING and Dianne K. King, Defendants and Appellees.

Nos. 17381, 17395.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1991.

Decided Dec. 31, 1991.

Rehearing Denied Feb. 4, 1992.

Robert A. Christenson of Christenson & Wilka, P.C., Sioux Falls, for plaintiffs and appellants.

David Alan Palmer, Sioux Falls, for defendants and appellees.

AMUNDSON, Justice.

Michael and Barbara O'Connor (O'Connors) appeal trial court's judgment granting rescission of a contract for deed to Vernell and Dianne King (Kings). We affirm in part and reverse in part.

## FACTS

O'Connors purchased the townhouse subject to this lawsuit in 1984. The townhouse is located in Sioux Falls. After living in the townhouse for approximately two years, O'Connors leased it to Kings on October 1, 1986, for $800 monthly rental. The lease contained an option to purchase the townhouse for $89,500. In the event Kings exercised their option to purchase, the option provided for a credit toward the purchase price of up to $4,800 for rent paid, plus $800 security deposit required by the lease and made by Kings.

Kings exercised their option to purchase on June 15, 1987. After this, O'Connors and Kings entered into a contract for deed (contract) for the sale of the townhouse. The $5,600 credit constituted the down payment under the contract. The contract provided for monthly payments in the amount of $838.54 commencing on August 15, 1988.

Prior to leasing the townhouse, Vernell King noticed a crack in a retaining wall near the driveway of the townhouse. At this time, Michael O'Connor also showed Vernell King an area along the east foundation wall of the townhouse where there was a separation of the earth and foundation. O'Connors agreed to pay for dirt to be brought in and placed along the east foundation. Both parties believed this would eliminate potential water problems in the basement. A special provision regarding the retaining wall was put in the contract at Paragraph 16 prior to its execution.[1]

At some point prior to Kings' leasing the townhouse, the evidence disclosed that water seeped into the basement of the townhouse. O'Connors did not inform Kings of this fact during their negotiations, since there was no apparent water damage. The evidence further disclosed that in September of 1986 O'Connors and Kings met and Dianne King explicitly questioned O'Connors concerning the existence of water in the basement. O'Connors denied any existence of water in the basement.

In the fall of 1987, Kings began experiencing problems with doors sticking and interior walls cracking. In the spring of 1988, the retaining wall crack had widened and Kings contacted O'Connors regarding these problems. In the spring of 1989, Kings discovered water damage in the basement bathroom. Kings then contacted two construction companies for repair estimates on the water damage. Kings then approached O'Connors to make the recommended repairs. O'Connors refused to pay

---

1. Paragraph 16 reads:

It is hereby agreed between buyer and Seller, that if in the course of this Contract for Deed that the "east foundation wall" or the "retaining wall" as said walls pertain to the above described real estate, should ever collapse or cause structural damage to said real estate, Seller shall indemnify the Buyer for all costs of repair or replacement occurred by Buyer relating to said collapse or structural damage.

for any repairs except to the retaining wall. Kings moved out of the townhouse on October 15, 1989.

Next, O'Connors filed a complaint seeking damages for breach of contract and Kings answered and filed a counterclaim seeking rescission of the contract. O'Connors, while the breach of contract action was pending, filed a petition for declaratory judgment regarding the retaining wall provision and the trial court denied any relief on this subsequent filing by O'Connors.

A trial to the court was held on O'Connors' complaint for breach of contract and Kings' counterclaim for rescission on June 1, 1990. Prior to trial, O'Connors offered to stipulate to a rescission of the contract on the grounds of mutual mistake. Kings refused to so stipulate. After trial, the court granted rescission of the contract pursuant to SDCL 53–11–2(1) and (2).[2] The trial court then attempted to restore both parties to the position they were in prior to the execution of the contract. It awarded O'Connors the townhouse and $800 per month rent during the period of the contract. Kings were awarded $2,149.55 for improvements made to the townhouse, $4,495 for real property taxes paid during the course of the contract, $1,100 moving expenses, $513.24 for insurance premiums paid during the life of the contract, and $1,026 which represents the difference between $800 monthly rental and $838 principal and interest payment on the contract over the 27–month period that Kings were in possession and making payments. O'Connors appeal the rescission and restitution award.

## ISSUES

1) Whether trial court erred in rescinding the contract for deed predicated upon the fraud of O'Connors?

2) Whether trial court erred in denying O'Connors' petition for declaratory judgment?

3) Whether trial court erred in awarding Kings $1,100 for moving expenses, $1,026 for reimbursement of rent paid, and denying O'Connors' request to be reimbursed for $5,600 credit allowed Kings at the time of closing?

4) Whether trial court erred in denying Kings' request for an award of their attorney fees, costs, taxes, and disbursements?

## ANALYSIS

### 1. *Fraud*

The existence of fraud is a question of fact for the fact finder. SDCL 53–4–5; *Holmes v. Couturier*, 452 N.W.2d 135, 137 (S.D.1990); *Tri–State Refining v. Apaloosa Company*, 431 N.W.2d 311, 314 (S.D.1988). The trial court found that O'Connors made a representation concerning the existence of water damage in the basement which was untrue, and such representations were made to deceive Kings and induce them to enter into the lease agreement and subsequently the contract. These findings are sufficient for rescission of the contract on the basis of fraud and this court will not reverse the trial court's findings unless they are clearly erroneous. *Holmes*, 452 N.W.2d at 137; *Smith v. Sponheim*, 399 N.W.2d 899 (S.D.1987).

This court gives due regard to the opportunity of the trial court to judge the credibility of witnesses. *In Interest of A.D.*, 416 N.W.2d 264 (S.D.1987). The trial court's finding of fraud was based entirely on its determination as to the credibility of Kings and O'Connors, and we must defer to the trial court's judgment. Our review of the record reveals sufficient evidence from which the trial court could have found fraud on the part of O'Connors. We can-

---

**2.** SDCL 53–11–2 provides in pertinent part:
A party to a contract may rescind the same in the following cases only:
(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the
connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part[.]

not therefore say the findings are clearly erroneous.

The trial court granted rescission of the contract on two grounds: (1) fraud, and (2) failure of consideration. The finding of fraud was sufficient to grant rescission, and we deem it unnecessary to review the trial court's holding on failure of consideration.

## 2. Declaratory Judgment

O'Connors filed a petition for declaratory judgment on February 26, 1990. The petition requested the trial court to declare O'Connors' duties pursuant to paragraph 16 of the contract pertaining to repair or replacement of the east foundation wall and the retaining wall. The trial court denied the motion for declaratory judgment and scheduled a trial on the merits.

■ SDCL 21-24-10 provides that the "court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings." The trial court is vested with discretion to refuse to make a declaration if to do so would not terminate the controversy between the parties. *Royal Indem. Co. v. Metropolitan Cas. Ins. Co. of N.Y.*, 80 S.D. 541, 128 N.W.2d 111 (1964).

■ The trial court in this case found there were issues beyond the scope of the declaratory judgment petition and, accordingly, scheduled a trial on the merits. We find the record supports the trial court's conclusion that granting declaratory judgment would not terminate the controversy between the parties. O'Connors and Kings raised issues in their pleading beyond the narrow scope of paragraph 16 in the contract, which would have remained in controversy regardless of a grant of declaratory judgment. The trial court did not err in refusing to grant O'Connors' declaratory judgment petition.

## 3. Restitution

SDCL 53-11-5 provides:

The party rescinding a contract must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

■ When a buyer has been defrauded, he can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages. *Holmes*, 452 N.W.2d at 137; *Kerr v. Staufer*, 59 S.D. 83, 238 N.W. 156 (1931). O'Connors argue that the award to Kings for moving expenses and reimbursement for rent paid are in the nature of damages, not restitution and, therefore, are not recoverable upon rescission.

■ The payment of $1,100 moving expenses was not made from Kings to O'Connors. In fact, it was not paid to anyone, it was representative of $8.00 an hour for estimated time spent by the various persons who helped Kings move out of the townhouse. The record reveals that $300 of the expenses were for October, 1986, when Kings originally moved into the townhouse.

The law simply does not support such an award. Upon rescission, Kings must restore what they received and recover back what they paid under the contract. The $1,100 is not an amount paid under the contract. Although in *Whitson v. Lende*, 442 N.W.2d 267 (S.D.1989), we allowed an award for time spent in making improvements, we find it clearly distinguishable from the present case. In *Whitson*, we upheld an award for estimated time spent *making improvements* to the property in question. The time spent in *Whitson* was substantial (300 hours) and reflected the parties' personal labor toward improvements made as a direct result of the contract. The contract in *Whitson* provided a $1,000 allowance for improvements; thus, it was clear from the outset that both parties expected improvements to be made. We stated in *Whitson* that the award was clearly restitution, and restitution is appropriate in a rescission action when it is nec-

essary to award compensation to restore parties to their former situation. *Whitson, supra.*

This is not so in the present case. When Kings decided to move into O'Connors' townhouse, they were in the process of moving out of, and selling, their prior residence. Kings were moving regardless of O'Connors' offer on the townhouse and, had they never moved into O'Connors' townhouse, they still would have incurred moving expenses. Thus, an award for moving expenses would unjustly enrich Kings because they would recover for expenses which they would have incurred regardless of their contract with O'Connors. The trial court should not have awarded moving expenses.

There is ample evidence in the record to support an award of $800 monthly rental for 27 months. The record reflects all parties agreed that $800/month was reasonable. Therefore, Kings were required to pay $800 for every month they inhabited the townhouse. O'Connors were required to refund the portion of contract payments in excess of the $800 reasonable rent figure, or $1,026 ($38.00 or amount of contract payment which exceeded reasonable rental value × 27 or number of months which Kings were responsible for rent). In our view, this award prevented unjust enrichment to O'Connors and returned the parties to status quo.

O'Connors also argue that they are entitled to the $5,600 "credit" given Kings in the contract. We disagree. Following the same logic applied above, the $5,600 was a credit to Kings and not an actual transfer of funds. O'Connors received their property back and reasonable rental value (including the $5,600 rent payments received prior to the exercise of the option) for the time Kings inhabited it. That is all they are entitled to upon rescission.[3]

We reverse the trial court award for moving expenses, and affirm the award for rent paid and the denial of the claim for a refund of the $5,600, since this was included in the trial court's judgment restoring the parties to their same status as prior to the contract.

### 4. *Attorney fees*

As a general rule, attorney fees may only be awarded by contract or when specifically authorized by statute. SDCL 15–17–7; *Assman v. J.I. Case Credit Corp.*, 411 N.W.2d 668 (S.D.1987); *Ofstad v. South Dakota Dept. of Transp.*, 387 N.W.2d 539 (S.D.1986). In the absence of a statute or rule of court, or some agreement expressly authorizing taxing of attorney fees in addition to ordinary statutory costs, such an item of expense is not allowable. *Lowe v. Steele Const. Co.*, 368 N.W.2d 610 (S.D.1985). No statute, rule of court, or agreement existed in the present case, therefore, the trial court's judgment denying attorney fees is affirmed and the request for appellate attorney fees is hereby denied.

Affirmed in part and reversed in part.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

---

**3.** O'Connors may be able to recover damages for negligent construction should they pursue an action against the builder. *See Kristek v. Catron,* 7 Kan.App.2d 495, 644 P.2d 480 (1982), which relied on the South Dakota case of *Brown v. Fowler,* 279 N.W.2d 907 (S.D.1979). *Kristek* held that a construction contractor is liable for any injury to a third party, personal or economic, resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, when such injury is reasonably certain to occur if the work is negligently done. *Kristek,* 644 P.2d at 483.