Michelle Mueller TUCEK, Plaintiff and Appellant,

v.

Garlan MUELLER, Maynard Hieb, First State Bank, Wayne Kinonen, Crawford & Company and Economy Fire & Casualty Company, Defendants and Appellees.

No. 18122.

Supreme Court of South Dakota.

Argued April 19, 1993.

Reassigned Sept. 16, 1993.

Decided Feb. 9, 1994.

John E. Burke, Rita Haverly Allen, Hagen, Wilka, Schreier & Archer, Sioux Falls, for plaintiff and appellant.

Michael S. McKnight, Boyce, Murphy, McDowell and Greenfield, Sioux Falls, for appellees Hieb and First State Bank.

Douglas M. Deibert, Cadwell, Sanford and Deibert, Sioux Falls, for appellees Kinonen, Crawford & Co., and Economy Fire & Cas. Co.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

This is a civil lawsuit. Michelle Mueller Tucek (Tucek) charged her father, Garlan Mueller, with conversion, fraud and deceit concerning an insurance settlement. Maynard Hieb, First State Bank, Wayne Kinonen, Crawford & Company, and Economy Fire & Casualty Company (collectively referred to as appellees) were also named as defendants for their alleged roles in the fraud and deceit.

Default judgment was entered against Mueller on November 26, 1990 due to his failure to answer the Complaint. The remaining defendants thereafter filed for summary judgment. On July 8, 1992, the trial court informed Tucek that she would have to elect rescission as her remedy or summary judgment would be granted to the defendants. When she declined to elect that remedy, summary judgment was granted. Tucek appeals raising the following issues:

I.    Did the trial court err in requiring Tucek to elect either monetary damages or rescission as her remedy?

II.    Did the trial court err in granting summary judgment in favor of Hieb and Bank?

III.    Did the trial court err in granting summary judgment in favor of Kinonen, Adjusting Company & Insurer?

We treat each issue seriatim. We reverse and remand for the reasons and authority set forth in each issue.

## FACTS

As a result of a one-car accident on July 18, 1987, in which she was a passenger, Tucek sustained numerous injuries leaving her in a coma for eight days and hospitalized for six weeks. Renae Hoffman, driver of the car, was covered by $100,000.00 policy with Economy Fire & Casualty Company (Insurer). Insurer retained Crawford & Company (Adjusting Company) to investigate the accident and negotiate the settlement. Adjuster Wayne Kinonen was assigned to the case.

When Kinonen arrived where Tucek was hospitalized, he encountered Garlan Mueller

who informed him that he was Tucek's father and would handle the claim. Although Tucek was 19 years old and of legal majority, Kinonen dealt only with Mueller throughout the settlement process. Despite a policy of up to $100,000.00, plus ongoing medical bills, Mueller and Kinonen reached a quick settlement of $70,000.00. All the while, Tucek was unaware of these events.

To finalize the claim, Kinonen sent a release form to Mueller for Tucek's signature. Mueller took the unsigned release form to Maynard Hieb at First State Bank (Bank) in Tripp, South Dakota, to be notarized. Hieb stated that Tucek needed to sign the form in his presence. Mueller indicated that his daughter was outside in the van. Moments later, Mueller handed a signed copy of the release to Hieb. Although Hieb did not witness Tucek signing the form, he nevertheless notarized it. Tucek claims that the signature is a forgery.

Mueller later took Tucek and the release to Kinonen's office in Sioux Falls where the release was exchanged for two drafts ($70,-000.00 for the settlement and $825.87 for medical expenses) both payable to Tucek. She returned to the Bank, endorsed the checks, and deposited them into individual checking and savings accounts in her name but permitted Mueller to transfer money between accounts. Unbeknownst to Tucek, the accounts were set up as joint accounts permitting Mueller to write checks on her account. Although the checks were imprinted with her name only, Mueller, without Tucek's knowledge, repeatedly spent thousands of dollars of her money, via counter checks, which the Bank cashed without question.

After the checks were deposited, Tucek's mother discovered that Mueller had settled the claim for less than the policy limits and Tucek's signature on the release form was a forgery. When confronted with the claim of forgery, Kinonen contacted Hieb who reassured him that the signature was authentic. Kinonen also informed the Insurer of the charge but Insurer instructed Kinonen to do nothing. Thereafter, Tucek brought this suit. Other facts will be developed where necessary.

## DECISION

Our standard of review for a grant or denial of summary judgment was established in the seminal case of *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968):

> In reviewing a grant or denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to a judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubt should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991); *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 836–37 (S.D.1990). We examine the issues in light of these principles and holdings.

Tucek was an innocent victim in an automobile accident. She suffered severe injuries which include being in a coma for eight days, impaired brain functioning, memory loss, and an inability to conceptualize and verbally communicate. While in this state, her father, Mueller, settled her cause of action for $30,000.00 under the policy limit by forging her name on a release. As a result, he stole his daughter's money. A default judgment was taken against Mueller for fraud and deceit. Although he has not appealed, his name remains on the title of this appeal.

In reviewing this case, it is abundantly clear that Hieb, Bank, Kinonen, Adjusting Company and Insurer either assisted or participated with Mueller in this adjudicated fraud and deceit. Below, the trial court granted a summary judgment in favor of these parties and against the plaintiff, an innocent victim to all of these shenanigans

committed by the judgment victors. It is, as it stands now, a legal miscarriage of justice.

We note that summary judgment is an extreme remedy which should be awarded only when truth is clear and all reasonable doubts touching the existence of a material fact should be resolved against the movant. In this case, that would encompass Hieb, Bank, Kinonen, Adjusting Company, and Insurer. Furthermore, the evidence must be viewed *most favorably for the non-moving party*. This old edict was not followed in the trial court. These appellees carry the burden of proof to show *clearly* that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *American Indian Agr. Credit v. Fort Pierre*, 379 N.W.2d 318 (S.D.1985). They did not meet said burden. There are genuine issues of material fact regarding the conduct of all five appellees and their liability springing therefrom. Therefore, the summary judgment granted by the trial court is reversed.

1. *Trial court erred in restricting Mueller's choice of remedies.*

■ Tucek is entitled to sue for damages for fraud and deceit. Appellees argue that she must rescind under SDCL chap. 53–11. By virtue of our decisions in *O'Connor v. King*, 479 N.W.2d 162 (S.D.1991), *Holmes v. Couturier*, 452 N.W.2d 135 (S.D.1990), and *Kerr v. Staufer*, 59 S.D. 83, 238 N.W. 156 (1931), she has the right to the remedy of her choice. With the trial court's ultimatum—rescind or go home—Tucek was deprived of a choice. Other jurisdictions have held:

> One who has executed a release or compromise of a cause of action sometimes feels that he was unduly pushed or fraudulently induced into making the agreement. In this situation there are several courses open to him. He may sue on the original cause of action and, when the release is tendered as a defense, assert its invalidity. He may begin an equity action to set aside or reform the release or compromise agreement. *Or he may affirm the agreement and bring an action of deceit to recover the damages he suffered by reason of executing the same.*

W.R. Habeeb, Annotation, *Release Induced by Third Person*, 58 A.L.R.2d 500 (1958) (emphasis added).

Appellees insist she must return the money to now sue for damages. Let us review the justice of that remark in light of these facts:

(a) Of the $70,000.00 paid, over $30,000.00 was spent on medical bills;

(b) Bank obtained money from her father who stole it from her—to pay off her father's delinquent loan on his bowling alley;

(c) Mueller, using the settlement money he alone negotiated, purchased a new van, and with those same stolen funds, took a grand vacation to Florida;

(d) Insurer, Adjusting Company and Kinonen settled for $30,000.00 less than the policy limits or the "reserves" established to settle the claim. And during all of this time, Tucek was in a neurology ward, physically and mentally incapacitated, *and did not know* what was actually transpiring.

■ Apparently, those who either practiced fraud upon her or participated therein or knowingly received the fruits therefrom, would have Tucek return the proceeds of the settlement. Under this set of facts, such a tenet of thought is outrageous. Consider the following:

> [W]e believe no good reason can be suggested for placing upon the injured or defrauded party the burden of undoing or attempting to undo the wrong practiced upon him before he may have the right to sue for the damages resulting therefrom.

58 A.L.R.2d at 504 (citing *Bailey v. London Guarantee & Accident Co.*, 72 Ind.App. 84, 121 N.E. 128 (1918)). Although Tucek did endorse two checks, such does not prove that she accepted the settlement. Recall, she did not sign the release, therefore it cannot be assumed that the two checks constituted final settlement. Appellees, however, had an opportunity to undo this fraud; yet, they camped down on their favorable settlement and thereby ratified the fraud. *See Malakul v. Altech Arkansas, Inc.*, 298 Ark. 246, 766 S.W.2d 433 (1989). Tucek has every right to

affirm the contract and seek monetary damages. *Garrett*, 459 N.W.2d at 847.

### 2. *Trial court erred in granting summary judgment for Hieb and Bank.*

Tucek may take comfort in this state law: One who willfully deceives another with intent to induce her to alter her position to her injury or risk is liable for damages. SDCL 20–10–1. She may also rely upon SDCL 20–10–2(2) and (3). Said sections define deceit as the "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" or the "suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of fact[.]" For a similar definition of fraud, *see* SDCL 53–4–5. Questions of fraud and deceit are generally questions of fact and are to be determined, ordinarily, by a jury. *Commercial Credit Equipment Corp. v. Johnson*, 87 S.D. 411, 209 N.W.2d 548 (1973).

As a Notary Public, acting in a capacity for the Bank, Hieb authenticated a document which highly damaged Tucek. He affixed a Notary Public seal along with his signature expressing Tucek personally appeared before him. She did not. Under South Dakota law, this was a criminal act. SDCL 18–1–11. Her injury was further augmented when Kinonen approached Hieb about the claim that the signature was a forgery. Hieb's response confirming the signature's authenticity directly aided Mueller's dishonesty. Hieb committed a criminal act and then lied to cover his deed, thereby ratifying Mueller's fraud. 37 C.J.S. *Fraud* § 61 (1943). *Every participant in a fraud and each one who assists another in the perpetration of the fraud is liable to the injured party.* People ex rel. Hartigan v. E & E Hauling, 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165 (1992); *Kaas v. Privette*, 12 Wash.App. 142, 529 P.2d 23 (1974); 37 Am.Jur.2d *Fraud and Deceit* § 305 (1968). A notary public is responsible to all persons who have been defrauded of their money as a consequence of improper execution of his official notary duties. *Summers Bros., Inc. v. Brewer*, 420 So.2d 197, 204 (La.App.1982). As Mueller defrauded his own daughter, it is up to a jury to determine if Hieb's misinformation constituted or assisted that fraud. *O'Connor*, 479 N.W.2d at 164.

When Hieb notarized this document, he knew that Tucek had recently been injured in an accident leaving her in a coma. He was also cognizant of Mueller's cash flow problems, including unpaid loans to the Bank. Although irrelevant to Tucek's policy, Bank relayed this information highlighting Tucek's father's economic dire straits to the adjuster. Hieb's actions directly assisted Mueller in obtaining the proceeds of the settlement and in using these proceeds to pay off a delinquent loan to the Bank.

When Tucek opened a checking account with the insurance proceeds, she claims she did not open a joint account. Only her name was imprinted on the checks. Nevertheless, Mueller's name appeared on the account in the bank records. Bank accepted numerous counter checks signed by Mueller in varying amounts, including $7,400.00 and $2,000.00. Allegedly, Mueller paid off his loans to the Bank with these funds. Genuine issues of material fact appear to exist as to Hieb's and Bank's participation in Mueller's fraud and deceit.

It is clear that Mueller needed Hieb and the Bank in order to obtain and maintain access to the settlement. Hieb testified he was acting within the scope of the Bank's employment when he provided notarial services. Summary judgment cannot be upheld for either Hieb or the Bank.

### 3. *Trial court erred in granting summary judgment for Kinonen, Adjusting Company and Insurer.*

When the release was forged, Tucek was suffering from an organic mental disorder, secondary to a head injury. No guardian ad litem was appointed for her. Medical reports reflecting her condition were made available to Kinonen and Insurer. Undisputed medical evidence reveals that she was in no mental state to execute any settlement papers or cash any checks or conduct business.

Viewing the facts most favorably to the nonmoving party, *American Indian Agr.*

*Credit,* 379 N.W.2d at 320, we note that Kinonen knew Tucek was of legal age and knew Mueller did not have power of attorney. Notwithstanding, this adjuster, with over ten years of experience, never dealt with the claimant, Tucek (and only met with her once briefly); rather, he conferred only with Mueller, a man without legal authority to settle the matter. Kinonen knew of Mueller's financial difficulties and eagerness to make a quick settlement, expressed concern that Mueller might be taking advantage of Tucek, admitted that a $100,000.00 settlement was not out of the question, and knew Tucek's mental and medical status were in question. In fact, Kinonen, in his deposition, expressed that Tucek's mother advised him that "... no settlement could be made until several years." However, the settlement, per Mueller, was quickly settled, well under the policy limit.

Typically, Kinonen would have a settlement release notarized, but did not do so this time. Thereafter, he learned that Tucek's signature on the release had been forged. Nevertheless, Insurer proceeded with the settlement draft and "asked [Kinonen] to do nothing," full well knowing that it had the power to stop the draft, full well knowing that Tucek's father needed money. This is reflected by notes in Kinonen's file and in his deposition wherein he expressed "there was concern because of [Mueller's] anxiousness [to settle and get the money], which I believe I relayed to the company." Thus, Insurer knew it could reach a settlement favorable to itself albeit unfavorable to Tucek. In other words, strike when the iron was hot.

■ We reiterate that every participant in a fraud and each one who assists another in the perpetration of the fraud is liable to the injured party. *Hartigan,* 180 Ill.Dec. at 271, 607 N.E.2d at 179; *Kaas,* 529 P.2d at 29. Both Kinonen and Insurer expressed they could do nothing and could not stop the draft. Insurer knew it had a good deal and was not going to give its good deal away. Kinonen, his employer, and the insurance company ratified the fraud. Undisputed facts exist that these three parties were aware that Mueller was acting unscrupulously when they undermined the unknowing Tucek's claim.

By accepting the fruits of Mueller's fraud and deceit, the appellees also stand liable. *Malakul,* 766 S.W.2d at 436.

When Tucek was deposed, she stated that she did not know for certain if Hieb or the Bank benefitted from Mueller's actions. This testimony preceded Hieb's deposition. Although one cannot claim a better version of the facts than her own testimony, *Lalley v. Safway Steel Scaffolds, Inc.* 364 N.W.2d 139 (S.D.1985), *Tucek, while not accusing these appellees, never exonerated them.*

Hieb, Bank, and Insurer profited from the forgery and fraud. All appellees—as demonstrated by correspondence and telephone calls—knew Mueller needed money and there is a factual issue if they participated in a scheme to settle the claim in a hurry while the father's problems exacerbated. *Commercial Credit,* 209 N.W.2d at 551. What role, if any, did these appellees have in assisting the father in the fraud committed against his daughter? This burning question presents a genuine issue of material fact which precludes a summary judgment against Tucek on her cause of action for fraud and deceit against these appellees. A jury should sort out the facts. *Werner v. Norwest Bank,* 499 N.W.2d 138 (S.D.1993).

Reversed and remanded.

MILLER, C.J., and STEELE, Circuit Judge, concur.

SABERS, J., concurs specially.

AMUNDSON, J., dissents.

STEELE, Circuit Judge, for WUEST, J., disqualified.

SABERS, Justice (concurring specially).

I agree that genuine issues of material fact exist as to the fraud of Hieb *and* Bank, Adjuster Kinonen *and* his company, *and* Insurer. Employers and principals are bound by the acts of their employees and agents, Hieb and Kinonen.

This is a summary judgment case. The burden is upon Defendants to show that there are no genuine issues of material fact. They have failed to meet their respective

burdens. *Dept. of Rev. v. Thiewes*, 448 N.W.2d 1 (S.D.1989).

AMUNDSON, Justice (dissenting).

Tucek brought this action against Mueller for fraud, deceit, and conversion. Tucek alleged in a separate count that Hieb, Bank, Adjuster, Adjusting Company and Insurer were liable for fraud and deceit. This action was commenced some twenty months after she deposited the settlement proceeds into her bank accounts.

## Choice of Remedies

Tucek argues that the trial court is obligated to allow her a choice of either rescission or monetary damages as her remedy for fraud. Her argument is somewhat unclear in that the trial court did precisely what she is requesting. After the hearing on the motion for summary judgment, the trial court sent a letter to the parties setting forth its proposed ruling.[1] The letter stated that Tucek could elect either rescission or monetary damages. The letter provided:

1. If the plaintiff desires to elect rescission as her remedy, summary judgment will not be allowed as there are disputed facts.

2. If the plaintiff desires to proceed as the pleadings recite, summary judgment will be granted as to the allegation of fraud or deceit as no evidence exists to prove fraud, Garrett v. BankWest, Inc., 459 N.W.2d 833, 847 (S.D.1990), but not as to the allegations of negligence.

I do not find this statement by the trial court to be inconsistent with our previous holdings.

A victim of fraud has an election of remedies available to him. *Holmes v. Couturier*, 452 N.W.2d 135, 137 (S.D.1990). "He can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages." *Id.; see also O'Connor v. King*, 479 N.W.2d 162, 165 (S.D.1991). Tucek was given her choice of remedies and

elected to affirm the agreement and sue for monetary damages. Tucek's election, however, resulted in summary judgment.

## Summary Judgment—Hieb and Bank

Tucek asserts that the trial court erred in granting an order for summary judgment dismissing her claims of fraud and deceit against Hieb and Bank. "Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." *Garrett*, 459 N.W.2d at 847. However, when considering a motion for summary judgment, the issues presented in the pleadings are not controlling and a party may not rest upon the mere allegations contained therein. *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988). "The party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." *Id.* We must determine whether there exists any basis supporting the trial court's ruling. *Id.*

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20–10–1. To prove fraud, there must be a representation that was: (1) "made as a statement of fact, which was untrue by the party making it, or else recklessly made"; (2) "made with intent to deceive and for the purpose of inducing the other party to act upon it"; and (3) relied on by the innocent party, inducing that party "to act to his injury or damage." *Croes Family Trust v. Small Business Admin.*, 446 N.W.2d 55, 57 (S.D.1989). *See also Sperry Corp. v. Schaeffer*, 394 N.W.2d 727, 730 (S.D.1986).

Hieb's notarization of the release form was a representation that was made as a statement of fact which was untrue. Hieb's notarization represented that Tucek had signed the release form in his presence when, in fact, she had not. The notarization thus violated SDCL 18–1–11[2] and qualifies as a

---

1. The letter was not filed with the clerk by the trial court but later was filed as an exhibit to "Plaintiff's Motion to Reconsider Re: Proposed Ruling on Defendant's Motion for Summary Judgment" and is part of the settled record.

2. SDCL 18–1–11 provides:

   It is a Class 2 misdemeanor for any notary public to affix his official signature to docu-

misrepresentation under the first element of fraud.

The second element of fraud is that the misrepresentation be "made with intent to deceive and for the purpose of inducing the other party to act upon it." *Croes Family*, 446 N.W.2d at 57. Fraudulent intent is an essential element of deceit under South Dakota law. SDCL 20-10-1. Tucek's complaint itself asserts that Hieb "knowingly and intentionally participated with Mueller in effecting a fraud" against Tucek. However, no facts were presented to indicate any fraudulent intent on the part of Hieb in the underlying settlement transaction. In fact, Tucek's sworn testimony clearly indicates that there is no genuine issue of material fact regarding intent to deceive her or reliance by her.[3]

When Mueller presented the unsigned release form to Hieb at Bank, Hieb informed Mueller that Tucek would need to sign the form before he could notarize it. Mueller said that Tucek was outside in his van. Hieb looked out his window and believed he saw Tucek in the van. In his deposition, Hieb states that it was his intention to accompany Mueller to the van to obtain Tucek's signature. Unfortunately, Hieb was interrupted at this time. When he returned to Mueller, the release form bore what he assumed to be Tucek's signature. Believing that it bore Tucek's signature, Hieb notarized the release form even though it had not been signed in his presence. Hieb's actions may have been negligent and in violation of SDCL 18-1-11, but they do not rise to the level of intentional fraud. Summary judgment is proper if there

is no evidence of deceitful intent on the part of the defendant. *Garrett*, 459 N.W.2d at 847; *Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517, 522 (8th Cir.1987). These facts, which are not disputed, clearly provide the basis for upholding the trial court in this case. ·

Moreover, the third element of fraud is not met. Tucek did not rely on Hieb's misrepresentation. Adjuster, Adjusting Company and Insurer are the parties who relied on the validity of the notarization. Hieb's notarization of the release form resulted in Adjuster providing the $70,000.00 settlement check to Mueller, but it did not cause Tucek to cash the check nor did it cause Mueller's subsequent conversion of those funds. Tucek, in fact, accepted and deposited her $70,000 settlement check from Insurer. She was not upset with the settlement until more than six months later when she discovered that Mueller had subsequently converted a portion of the settlement funds in her account to his own use. This was discovered after she had reviewed her monthly bank statements. Tucek's initial reaction was to advise Mueller to refrain from making any further withdrawals.

Finally, Tucek asserts that Hieb and Bank worked with Mueller in perpetrating the fraud against Tucek. However, Tucek admits in her deposition that she has no facts to support her accusation of Hieb and Mueller working together. Rather, Tucek said she just believed they were probably working together, but did not know for sure. Tucek cannot claim a better version of facts than what she testified to. *Parsons v. Dacy*, 502

---

ments when the parties have not appeared before him.

3. Tucek's responses to questions propounded in her deposition show the following:

Q. Do you have any reason to believe that Maynard Hieb benefitted personally from this transaction?
A. I don't have anything behind it to back me up if I did, and I don't know whether—I don't think he did.
Q. Do you have any reason to believe that the bank benefitted as a result of this?     .
A. No.
Q. Do you have any reason to believe that Maynard and Garlan were acting together to try to rip you off?

A. I believe that Maynard believed whatever my dad told him. I mean, he notarized it. I can't help but wonder. I mean, he took his word for it and I was not there to sign it. So I don't know if, you know, what they were thinking, if they were together, or I don't know what to really assume about it.
Q. You don't have any facts that lead you to believe that Maynard was doing that?
A. No, I don't have any facts that would support my accusing them of working together, if that's what you mean. But he notarized it and I wasn't there, so I guess it leads me to believe that they probably were working together, but I don't know for sure.

N.W.2d 108 (S.D.1993). Tucek asserts that every person who assists another in the perpetration of fraud is liable to the injured party citing *Kaas v. Privette*, 12 Wash.App. 142, 529 P.2d 23 (1974). However, in *Kaas*, each of the liable stockholders had made an active misrepresentation to the injured party unlike the facts before us. More than a mere participation is necessary to be liable for fraud; that participation must be knowing with the intent to induce the other party's actions. SDCL 20–10–1; *Sperry Corp.*, 394 N.W.2d at 730. Although Hieb notarized the release form and Bank established joint accounts for Mueller and Tucek, there is no evidence that Hieb or Bank were active knowing participants in Mueller's fraudulent conversion of Tucek's funds.

*Summary Judgment—Adjuster, Adjusting Company, and Insurer*

Tucek asserts that Adjuster, Adjusting Company, and Insurer "knowingly and intentionally participated with Mueller in defrauding" Tucek. As discussed above, to prove fraud there must be a representation that was: (1) "made as a statement of fact, which was untrue by the party making it, or else recklessly made"; (2) "made with intent to deceive for the purpose of inducing the other party to act upon it"; and (3) relied on by the innocent party, inducing that party "to act to his injury or damage." *Croes Family*, 446 N.W.2d at 57; *see also Sperry Corp.*, 394 N.W.2d at 730.

There is not one scintilla of evidence bringing the actions of Adjuster, Adjusting Company, and Insurer within the parameters of fraud and deceit. Tucek has not been diligent in presenting facts which show where Adjuster, Adjusting Company, or Insurer made any representations as statement of fact which were untrue with the intent to deceive Tucek. Adjuster did negotiate Tucek's claim with Mueller instead of Tucek. Adjuster's uncontroverted testimony was that it was not unusual in the industry to deal with the parent when negotiating the claim of a child. Mere negotiations do not rise to the level of proof necessary to constitute fraud. *Midland Nat'l Bank v. Perranoski*, 299 N.W.2d 404, 413 (Minn.1980) (banker not liable to answering partners for fraudulent misrepresentation where he had made no false representations in convincing them to make investment). More than a passing participation is necessary to constitute fraud; each element of fraud must be supported by evidence. *Selvidge v. McBeen*, 230 Mont. 237, 750 P.2d 429, 433 (1988). There has been no evidence presented in resistance to the motion which show active participation with Mueller in converting the settlement funds to his personal use. There can be no dispute as to who is the scoundrel in this transaction, *i.e.*, Mueller, the father.

Likewise, when Koepke asserted that Tucek's signature on the release form was a forgery, Adjuster immediately called Hieb to verify the notarization. Hieb assured Adjuster that the signature was Tucek's. Adjuster acted prudently to insure the release was valid. Furthermore, Tucek, even if she did not sign the settlement and release, accepted the settlement funds and was not upset with the settlement until she learned that Mueller had converted part of the settlement funds in her bank account to his own use. There has been no showing that Adjuster knowingly and intentionally participated in Mueller's fraud or conversion. In her deposition, Tucek admits that she has no information showing Adjuster's participation with Mueller. Again, Tucek can claim no better version of the facts than she testified to in her deposition. *Parsons*, 502 N.W.2d at 111.

In considering this case, one could easily identify with the position of Tucek, since it is evident that she was taken advantage of by her father. On the other hand, jurors are regularly instructed that sympathy is not to play a role during their consideration of the case. The villain in this case is the father and this court should not open up the vaults of the bank or the insurance company to pay for his despicable conduct in converting his daughter's settlement for his personal use. Lest we not forget, Tucek, after receiving the settlement proceeds, did agree to loan a portion of it to her father. Thereafter, he tapped her accounts without her consent and was told to stop, but did not. Further, Tu-

cek has a judgment against Mueller for $230,400.00 which no one has contested.

I would affirm the trial court.

