US LUMBER, INC., a South Dakota Corporation, Roger Duba and Sandra Duba, Plaintiffs and Appellants,

v.

Charles F. FISHER, Defendant and Appellee.

No. 18402.

Supreme Court of South Dakota.

Argued April 25, 1994.

Reassigned Aug. 15, 1994.

Decided Oct. 12, 1994.

Rehearing Denied Nov. 18, 1994.

Ronald W. Banks of Banks, Johnson and Colbath, Rapid City and Thomas L. Brejcha of Abramson and Fox, Chicago, IL, for plaintiffs and appellants.

Lonnie R. Braun and Thomas W. Stanton of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

HENDERSON, Retired Justice (on reassignment).

### PROCEDURAL HISTORY/ISSUES

Alleging rescission, negligent misrepresentation, fraud and deceit in an action commenced January 29, 1991, U.S. Lumber and its owners (Plaintiffs) sought to negate their purchase of a partnership interest from Charles F. Fisher (Fisher), who counterclaimed demanding the final installment of the purchase through a promissory note. Concluding that Plaintiffs elected the remedy of rescission, the trial court dismissed the non-rescission actions in the complaint. Thereafter, the jury returned a verdict in favor of Fisher. The trial court also awarded Fisher prejudgment interest at a rate of fifteen percent (15%). On appeal, Plaintiffs raise the following issues:

I. Did the trial court err by dismissing the non-rescission claims?

II. Do alleged errors warrant a new trial?

III. Did the trial court err in awarding 15% prejudgment interest?

We affirm the dismissal of the non-rescission claims, but reverse the prejudgment interest rate.

### FACTS

On May 21, 1990, U.S. Lumber, a South Dakota corporation owned by Roger and Sandra Duba, contracted to purchase Fisher's fifty percent (50%) partnership interest in two Deadwood, South Dakota gaming operations (Goodtime Novelty and Jackpot Charley's) for $1,500,000. Under the terms of the agreement, U.S. Lumber was to pay Fisher $50,000 upon execution of the agreement and $950,000 at closing. The balance of $500,000 was due on or before January 10, 1991. Roger Duba (Duba), an experienced businessman with a master's degree in business, signed the agreement as president and guarantor. He also completed a promissory note guaranteeing payment of the final $500,-000.

Several weeks prior to the signing of this agreement, Fisher told Duba that the partnership owned 217 slot machines and was committed to purchase an additional 100. On Fisher's recommendation, Duba spent considerable time with both Fisher's partner and accountant to review documents on expenses and revenues. Duba learned that each machine netted over $30 per day, the partnership was earning in excess of $200,000 per month, and expenses for two operations were about $15,000 a month. Duba claims he was led to believe that there were other buyers who were interested in acquiring Fisher's interest, and that he "had just hours in which to make a decision or the business would be sold to someone else." According to his testimony, on at least three occasions prior to April 30, 1990, Duba asked Fisher for the partnership's 1989 tax return, cash flow statements, and expenses and revenues. He was told the documents had not been prepared and when the 1989 tax return was prepared, he would be given a copy. Duba never received the documentation he requested. Nevertheless, Duba insisted on finalizing the deal before Memorial Day; and, on May 21, 1990, the parties executed the

contract to purchase Fisher's ownership and promissory note.

In December of 1990, Duba determined that the monthly business expenses prior to U.S. Lumber's acquisition were in excess of $75,000 per month for Goodtime Novelty and $20,000 per month for Jackpot Charley's. (Fisher concedes that the $15,000 per month expense figure was understated.) On December 27, 1990, Duba, on behalf of U.S. Lumber, sent Fisher a letter rescinding the agreement and offering to restore to Fisher everything of value received from him. The letter requested the return of "all of the funds that have been paid, the obligations paid on behalf of the partnership, and the guaranties and mortgages executed by any or all of us." Fisher soon rejected U.S. Lumber's demands for rescission.

Plaintiffs filed a complaint, alleging rescission, negligent misrepresentation, fraud and deceit. Fisher counterclaimed for the final installment of $500,000 plus interest, and sought foreclosure of a mortgage on the Dubas' property in Deadwood which had been given as security. Fisher asserted that the Plaintiffs' December 27 letter constituted an irrevocable election to pursue the remedy of rescission, and made a motion to dismiss or for partial summary judgment on the remaining claims of fraud, misrepresentation, and punitive damages. Trial court granted the Motion to Dismiss the non-rescission actions.

The jury found that Fisher did not fraudulently induce Plaintiffs to enter into the contract, but found Plaintiffs in default on the promissory note. Fisher was awarded the principal of $500,000, plus prejudgment interest at 15%. Plaintiffs appeal the dismissal of the non-rescission claims and the interest amount.

## DECISION

### I. *Plaintiffs elected their remedy.*

■ "If a buyer has been defrauded, he has an election of remedies available to him. He can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages." *Holmes v. Couturier*, 452 N.W.2d 135, 137 (S.D.1990). Es-

sentially, the complaining party has the right to a choice or "election" of remedies. *O'Connor v. King*, 479 N.W.2d 162 (S.D.1991). This principle of law is deeply-rooted in this state by precedent dating back nearly one hundred years to *Davis v. Tubbs*, 7 S.D. 488, 64 N.W. 534 (1895). Election of remedies is not simply a rule of procedure; rather, it is based upon substantive law, birthed in the existence of contracts and the rights derived from those contracts. As we stated in *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 301 (S.D.1984):

> It is a well-recognized rule of contract law that once a party rescinds a contract, as Whitewood did here by its termination, the contract is extinguished and there is no longer any right of recovery under the contract provisions.

■ Recently, in *Tucek v. Mueller*, 511 N.W.2d 832 (S.D.1994), Tucek was entitled to sue for damages for fraud and deceit; Tucek also had the right to sue for rescission. In other words, she had the right to the remedy of her choice; however, the trial court deprived Tucek of that choice and restricted her remedy to rescission. We reversed. Herein, when Plaintiffs voluntarily informed Fisher by the December 27 letter that they were acting to "rescind that certain Agreement dated the 21st day of May, 1990," Plaintiffs unequivocally elected their remedy. They reaffirmed their election of rescission in paragraph XV of their Complaint, stating that they "did thereby rescind said agreement by letter dated December 27, 1990." Once elected, Plaintiffs were not entitled to sue under alternative theories of fraud, deceit, or misrepresentation.

From *Davis* to *Tucek*, dust has not had time to settle on this oft-used principle. It has lived on. The trial court did not err in dismissing Plaintiffs' additional tort claims.

### II. *Plaintiffs are not entitled to a new trial.*

■ Special Interrogatory A(1) was posed to the jury as follows:

> We the jury find that Charles Fisher fraudulently induced the Plaintiffs to enter into a contract for the purchase of Charles Fisher's fifty (50) percent in Goodtime

Novelty and Jackpot Charley's. (Answer Yes or No).

The jury answered "no." Therefore, the jury repudiated Plaintiffs' theory of the case. Having failed to prove fraud to establish rescission, Plaintiffs now desire to try the case on damages. Having failed to prove their theory of the case, they should not now, at the appellate level, be granted a new trial. The jury has spoken. *United States Fire Ins. Co. v. Dace*, 305 N.W.2d 50 (S.D.1981).

■ Plaintiffs also attack the burden of proof submitted to the jury. After initially arguing for the preponderance test, Plaintiffs stipulated to the use of the clear and convincing standard. The trial court complied by placing this standard in the jury instructions. Said stipulation was tantamount to a failure to preserve this claimed error for appeal. *Haberer v. Rice*, 511 N.W.2d 279 (S.D.1994); *Matter of Estate of Eberle*, 505 N.W.2d 767 (S.D.1993). They cannot take advantage of their own invited error.

III. *Fisher was entitled to 12% pre-judgment interest.*

■ As part of the purchase agreement on May 21, 1990, Roger Duba, as president of U.S. Lumber and its guarantor, signed a promissory note to pay Fisher the remaining $500,000 "with interest at twelve (12) percent per annum from the date hereof" on or before January 10, 1991. In addition, Duba marked through this quoted phrase and, in his own handwriting, wrote "no interest" "R. Duba 5/21/90" in the margin of the promissory note. Due to this alteration, Plaintiffs contend that the parties expressly intended that no interest would apply and, as such, the prejudgment interest should be zero. Although Fisher makes no argument on the alteration, we notice that nowhere on the promissory note is there any indication whatsoever that Fisher has agreed to the delineation of the interest. (If this Court were to ignore Duba's marks on the promissory note, SDCL 21–1–13.1 sets prejudgment interest at the contract rate. Thus, the note's twelve percent (12%) rate would apply.) At most, Fisher agreed to a zero interest rate being charged under the expectation that the lump sum of $500,000 would be paid as due. No

installment plan with an interest rate was necessary. In sum, prejudgment interest was warranted. *Honomichl v. Modlin*, 477 N.W.2d 599 (S.D.1991).

■ The trial court set the prejudgment interest rate for the $500,000 based upon SDCL 54–3–5:

Unless there is an express contract in writing fixing a different rate, interest is payable on all moneys at the Category F rate of interest as established in § 54–3–16 after they become due on any instrument of writing, and on moneys lent, or due on any settlement of accounts, from the day on which the balance is ascertained, and on moneys received to the use of another and detained from him.

SDCL 54–3–16, prior to its 1994 amendment, set the Category C rate of interest at 15% per year. On the contrary, Plaintiffs seek to apply the Category B rate of 12% interest found in SDCL 21–1–13.1, which provides:

*Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred,* except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt. Prejudgment interest is not recoverable on future damages, punitive damages or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life or loss of society and companionship. If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered. If necessary, special interrogatories shall be submitted to the jury. *Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate specified in § 54-3-16.* The court shall compute and award the interest provided in this

section and shall include such interest in the judgment in the same manner as it taxes costs. (Emphasis added.)

SDCL 54–3–5 specifies interest due on "any instrument of writing." The parties are in agreement that the promissory note is indeed an "instrument of writing." This instrument specifies that its purpose is to guarantee compliance with the agreement to purchase Fisher's share of the casinos. The agreement also reflects this guarantee. Hence, the promissory note serves in the broader capacity to enforce the provisions of the sale contract; it is more than an "instrument of writing."

■ Both of the above statutes concern interest due on contracts. Although SDCL 54–3–5 has been used to award prejudgment interest, the language is not specific to such ends. On the other hand, SDCL 21–1–13.1 is very specific on awarding prejudgment interest in contract actions. It is well-established that terms of a statute relating to a particular subject will prevail over general terms of another statute. *Nelson v. School Bd. of Hill City,* 459 N.W.2d 451, 454 (S.D.1990); *Meyerink v. Northwestern Pub. Serv. Co.,* 391 N.W.2d 180, 184 (S.D.1986). As such, SDCL 21–1–13.1 prevails here.

Additionally, due to the potential applicability of either statute, SDCL 21–1–13.1 controls because it is the more recent enactment. *In re Estate of Smith,* 401 N.W.2d 736, 740 (S.D.1987); *Kneip v. Herseth,* 87 S.D. 642, 214 N.W.2d 93 (1974). Thus, the proper interest rate was 12%.

Affirmed in part, reversed in part.

MILLER, C.J., WUEST and AMUNDSON, J., concur.

SABERS, J., dissents.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

The issue is:

Whether the trial court erred in granting Seller's Motion to Dismiss the non-rescission claims.

The trial court erred in granting Seller's Motion to Dismiss the non-rescission claims. South Dakota authority allows pursuit of alternative remedies so long as a litigant is not awarded double recovery. SDCL 15–6–8(a) provides in part that "[r]elief in the alternative or of several different types may be demanded," and SDCL 15–6–8(e)(2) provides in part:

A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal or equitable grounds or on both. (Emphasis added.)

"Matters of statutory construction are questions of law. Likewise, construction of a written contract is also a question of law." *Stover v. Critchfield,* 510 N.W.2d 681, 683 (S.D.1994) (citations omitted). We review questions of law de novo. *Id.*

SDCL 53–11–2 provides, in part that: "A party to a contract may rescind the same . . . [i]f consent of the party rescinding . . . was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds[.]" *See Holmes v. Couturier,* 452 N.W.2d 135 (S.D.1990). As indicated above, Lumber and Duba (Buyers) attempted to rescind the agreement and offered to restore to Seller everything of value received from him.

In *Holmes v. Couturier,* Holmes purchased a campground from Couturier for $172,000 under an installment purchase agreement. When Holmes experienced problems with the sanitary and electrical systems, he served Couturier with notice of rescission and, nineteen days later, a summons and complaint. The trial court granted the rescission based on fraud. Couturier argued on appeal that Holmes was entitled to monetary damages only, and not rescission of the contract. In explaining Couturier's misunderstanding of the law of fraud, this court stated that "[i]f a

buyer has been defrauded, he has an election of remedies available to him. He can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages. Holmes elected to rescind the contract, and having established fraud, *he is entitled to the remedy of his choice." Holmes,* 452 N.W.2d at 137–38 (citations omitted) (emphasis added). *See Tucek v. Mueller,* 511 N.W.2d 832, 838 (S.D.1994) (Amundson, J., dissenting) ("A victim of fraud has an election of remedies available to him. He can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages."); *O'Connor v. King,* 479 N.W.2d 162, 165 (S.D. 1991) ("When a buyer has been defrauded, he can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages.").

Rule 8(a) and (e)(2) of the Federal Rules of Civil Procedure are very similar to SDCL 15–6–8(a) and 15–6–8(e)(2), respectively. In discussing Rule 8, Federal Practice and Procedure examines the abolishment of the "theory of the pleadings doctrine," a "rule of pleading that a complaint must proceed upon some definite theory, and on that theory the plaintiff must succeed, or not succeed at all. A complaint cannot be made elastic so as to take form with the varying views of counsel." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (1990).

The federal rules effectively abolish the restrictive theory of the pleadings doctrine. The text of several rules, although never specifically disavowing the doctrine, makes it very plain that the theory of the pleadings mentality has no place under federal practice. Rule 8(a) eliminates the concept of "cause of action"; Rule 8(e) provides

that a party may set forth two or more statements of claim alternatively or hypothetically[.]

*Id.*

Under Rule 8(e)(2) a party is permitted to set forth inconsistent statements either alternatively or hypothetically within a single count or defense, or in separate claims or defenses. He also may state as many separate claims or defenses as he has, regardless of consistency or whether they are based on legal, equitable, or maritime grounds. The federal rule abrogates the so called "theory of the pleadings" doctrine, which required a plaintiff to seek recovery on a single theory, and only permitted relief to be granted on a particular theory adopted by the pleader.

*Federal Practice and Procedure* § 1283.

In *Walraven v. Martin,* Michigan rejected what they referred to as the "election prior to trial doctrine," noting that such a rejection was consistent with Michigan's rules of civil procedure. 123 Mich.App. 342, 333 N.W.2d 569, 573 (1983). "Modern rules of civil procedure, the election of remedy doctrine expressed in the current legal periodicals cited earlier, and the Supreme Court's decision in *Gruskin v. Fisher,* 405 Mich. 51, 273 N.W.2d 893 (1979), lead us to conclude that plaintiff may simultaneously pursue all of his remedies against the sellers and other defendants herein regardless of legal consistency, *so long as plaintiff is not awarded double recovery." Id.* 333 N.W.2d at 572 (emphasis in original).

With the adoption of SDCL 15–6–8(a) and 15–6–8(e)(2), the South Dakota Supreme Court also rejected the "theory of the pleadings doctrine," thereby allowing a party to state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds.[1] In

---

1. See *Federal Practice and Procedure,* § 1283 which states:

Common law and code practice condemned inconsistency in pleadings because it was believed that a pleading containing inconsistent allegations indicated falsehood on its face and was a sign of a chicanerous litigant seeking to subvert the judicial process. All too frequently, however, valid claims were sacrificed on

the altar of technical consistency.... Under the present federal procedure a party may plead inconsistently, subject only to the limits of making a reasonable inquiry and interposing a pleading only for proper purposes set forth in Rule 11. In contrast to common law and code practice, the rules recognize that inconsistency in pleadings does not necessarily mean dishonesty, and that frequently a party,

other words, under SDCL 53–11–3, Buyers may pursue rescission and, if denied by the jury because they failed to use "reasonable diligence to comply with §§ 53–11–4 and 53–11–5,"[2], may pursue alternative remedies of fraud and deceit and misrepresentation. SDCL 53–11–3. *See Federal Practice and Procedure* § 1283 ("Courts have permitted plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim or allege fraud or some other tort theory."). *See generally Jensen v. Weyrens,* 474 N.W.2d 261, 265 (S.D.1991) (noting that when a plaintiff seeks specific performance or money damages "in the alternative," the court's equitable discretion to award money compensation in addition to specific performance is not limited if necessary to grant full relief).

The defect in the majority's theory is their reliance on the fact that Buyer sent a letter rescinding the purchase. The majority overlooks the fact that Buyer's attempt was immediately rejected by Seller. The majority mistakenly holds Buyers irrevocably bound to that which they attempted to do but which was unsuccessful from the start.

Obviously, where a Seller acquiesces in the Buyers' demand for rescission and retakes

possession, damages for rescission only would remain for determination. Here, Fisher, as the Seller, rejected the Buyers' attempt to rescind and the Buyers had to remain in possession of the premises. Therefore, Buyers must be given an opportunity to assert non-rescission claims and damages. Here, the trial court refused to permit these alternative claims, and it was reversible error.

Although there may be cases where it may be too burdensome on a defendant to defend alternative claims, this is not such a case. The trial court erred in granting Fisher's Motion to Dismiss the non-rescission claims prior to trial and we should reverse and remand for trial.

---

after a reasonable inquiry and for proper purposes, must assert contradictory statements when he legitimately is in doubt about the factual background of his case or the legal bases for his recovery or defense.
*Id.* at 533.

**2.** SDCL 53–11–4 provides:

The party rescinding a contract must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind.
SDCL 53–11–5 provides:
The party rescinding a contract must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.
Under SDCL 53–11–4, Buyers were required to "rescind promptly" upon discovery of grounds for rescission. Failure to do so would have lost

their right to that remedy. *Saunders v. Farmers & Merchants Nat. Bank of Milbank,* 61 S.D. 261, 265, 248 N.W. 250, 252 (1933); *Nielsen v. McCabe,* 442 N.W.2d 477 (S.D.1989); *Knudsen v. Jensen,* 521 N.W.2d 415, 420 (S.D.1994).

At the direction of the Legislature and this court, Buyers should not "sit on their rights" but act diligently and reasonably to preserve their right to rescind a contract. *Id.* at 421 (Wuest, J. dissenting on the basis that buyers acted promptly after discovery of grounds for rescission and that no prejudice to sellers was shown); SDCL 53–11–4. Buyers' prompt notification to Seller of the grounds for rescission preserves their right to rescind the contract. *Knudsen,* at 421 (Wuest and Sabers, J.J. dissenting on the basis that notice was timely and no prejudice was shown). It is inconsistent to require aggrieved buyers to notify a seller promptly to preserve their right of rescission, then limit their rights to pursue other remedies, thereby penalizing them for preserving their rights. This directly conflicts with SDCL 15–6–8(a), 15–6–8(e), and precedent.